Argued April 25, affirmed September 6, 1978

STATE OF OREGON, *Respondent,*
*v.*
RANDY LEE HIBDON, *Appellant.*
(No. 75-1364, CA 8950, No. 75-1363, CA 8976,
No. 75-1052, CA 8985)
(Cases consolidated)
583 P2d 579

Marianne Oswald, Deputy Public Defender, Salem, argued the cause for appellant. With her on the brief was Gary D. Babcock, Public Defender, Salem.

Brian R. Barnes, Assistant District Attorney, Eugene, argued the cause for respondent. With him on the brief was J. Pat Horton, District Attorney, Eugene.

Before Schwab, Chief Judge, and Thornton, Tanzer and Buttler, Judges.

BUTTLER, J.

**BUTTLER, J.**

Defendant appeals his conviction on three separate indictments for armed robbery of three stores in Eugene and Springfield, all of which have been consolidated for this appeal. Two errors are assigned: (1) the failure of the trial courts to suppress inculpatory statements made by defendant, and (2) the denial of defendant's motion to dismiss the three indictments because the state did not comply with the Interstate Compact on Detainers.

I

Defendant was apprehended in the course of an armed robbery on March 3, 1975, in Kent, Washington. He was advised of his *Miranda*[1] rights prior to any questioning by Washington authorities and was questioned with respect to his understanding of those rights. Defendant then proceeded to discuss the Washington robbery, stating that there was no sense in lying about it because the police "have got me." He proceeded to talk freely about his recent escape from Oregon State Penitentiary, followed by robberies in Eugene, Albany and Springfield in Oregon involving Safeway stores, and how he had eventually arrived in Kent. The detective notified authorities in Springfield and Albany, and on March 4, 1975, two police officers from Oregon, officer Halford from Springfield, and officer Martin from Albany, went to Washington to interview defendant regarding several robberies that had occurred in their respective jurisdictions.

Prior to the arrival of the Oregon police officers, defendant was arraigned in Kent, at which time his rights were explained to him again by the judge. Further, defendant had signed a consent to search the apartment where he was staying in Kent, and the ensuing search resulted in the finding of a gun, which defendant acknowledged to be his.

---

[1] *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974 (1966).

Defendant was fully apprised of his *Miranda* rights again prior to any discussion with the Oregon police officers. During the course of the ensuing conversation, defendant made several statements which were ultimately admitted at two of the trials involved in this appeal. It is defendant's contention that one of the officers indicated to him:

" '* * * You might as well go ahead and tell us all about it because you probably won't ever come to trial anyway since you are doing, you are going to be doing time up here,' or something similar to those words. * * *"

Based on this contention, defendant argues that his statements were unlawfully induced and that the trial court erred in denying his motions to suppress them.

Assuming that such a statement was, in fact, made by one of the officers, we need not decide whether it amounted to such a promise or inducement as would vitiate defendant's subsequent confessions. *See State v. Schwensen,* 237 Or 506, 392 P2d 328 (1964). There was substantial evidence to support the conclusions of both trial judges after the omnibus hearings preceding each of the trials in which defendant's confessions were admitted in evidence that defendant's statements were freely and voluntarily made. *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968).

While it is true that the officers did not flatly deny that such a statement was made by one of them, each of them said he did not recall it; one of them conceded that something like that could have been said.[2] However, the evidence indicates that if it was said, it was

---

[2] Officer Halford testified:

"That may have been discussed. I don't recall that statement being made by myself at all anytime that I was with Mr. Hibdon. I don't specifically recall Detective Martin saying that specifically, as I mentioned, we had discussed the fact that—or Mr. Hibdon had indicated that he was looking at a long prison term in Washington, he felt, because of the admissions that he made in that crime."

Officer Martin testified: "I may have said something similar, it is possible."

during a general discussion in which defendant was hypothesizing that he was probably looking at a lengthy sentence in Washington (possibly life plus ten years) and that he was not concerned about serving further time in Oregon because he would escape again. The record as a whole indicates that defendant was very cooperative with both Washington and Oregon authorities, and supports the conclusion that defendant confessed to the Oregon robberies after he was satisfied that the state already had a strong case against him. He conceded that he confessed to the Albany robbery prior to the "promise" he claims was made and had also acknowledged having committed other robberies of stores in Eugene and Springfield, although not in as much detail as was given ultimately. To the extent that defendant believed he would not stand trial in Oregon, that belief was the result of his own evaluation of the situation.

The motions to suppress were properly denied.

## II

Defendant's other assignment of error is that all three of the Lane County indictments should have been dismissed because the state failed to bring him to trial within the time specified in the Interstate Compact on Detainers, ORS 135.775. At the hearing on the issue below, it was stipulated that in February of 1976, while defendant was in the Walla Walla State Penitentiary, the records clerk indicated to him that there were three jurisdictions in the state of Oregon who had expressed some interest in him. The three jurisdictions were Marion, Linn and Lane Counties. The clerk further advised defendant that if he was concerned about those matters, he had a right under the Interstate Compact on Detainers to request a

---

A fourth person, identified in the transcripts as Colin Perry, testified that he was told by Officer Martin that such a statement had been made to the defendant.

speedy trial in those jurisdictions, and to do so, he was to sign certain forms.

Defendant signed the forms on February 16, 1976, but it appears that because of an administrative error in the Washington prison office, the requests for speedy trial defendant sought to convey were not sent or delivered to Lane County authorities; only Linn County received notice.

■■ It is defendant's argument that he did all that he could to invoke the statutory process, and that he should not suffer the consequences of the failure of the Washington authorities to carry out their functions. Accordingly, he contends that the indictments should have been dismissed since he was not brought to trial within the statutorily prescribed 180 days. Article III(a) of the Interstate Compact on Detainers provides:

> "Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within 180 days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint. * * *"

We need not, however, reach the issue of whether the facts related above satisfy defendant's obligation to "have caused to be delivered" or whether, as the state argues, delivery of the notice must be "actual." The record is that no detainers were lodged at the Walla Walla State Penitentiary by Lane County, Oregon, involving the three charges against defendant until January 19, 1977. The statute clearly provides that the lodging of a detainer triggers defendant's rights under the Compact. *See State v. Puckett,* 22 Or App 154, 157, 538 P2d 74 (1975). Absent a detainer,

defendant's attempted invocation of the Compact was premature. Defendant does not contend that his constitutional right to a speedy trial has been violated, and has neither claimed nor shown any prejudice resulting from any delay in prosecution.[3] *State v. Gray,* 26 Or App 901, 554 P2d 638, *rev den* (1976).

Affirmed.

[3]Defendant does not raise, and we do not decide, the question of whether there may be circumstances where failure of the state to lodge detainers might constitute a constitutional deprivation of the right to a speedy trial.

Nor does defendant contend that his right to a speedy trial under ORS 135.747 were violated. He relies solely on his rights under ORS 135.775.