Argued May 24, affirmed October 1, 1979

STATE OF OREGON,
*Respondent,*
*v.*
JOHN DARRYL DeMOTTE,
aka John Collins,
*Appellant.*

(No. 77-1780, CA 12238)

600 P2d 923

James E. Mountain, Jr., Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

James M. Brown, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Schwab, Chief Judge, and Tanzer, Richardson, and Roberts, Judges.

RICHARDSON, J.

## RICHARDSON, J.

Defendant appeals his conviction for Burglary in the First Degree, ORS 164.225. He contends that he was denied the right to a speedy trial under the Interstate Agreement on Detainers, ORS 135.775 and under the Sixth Amendment to the United States Constitution and Article I, § 10 of the Oregon Constitution.

On January 31, 1977, defendant burglarized a residence in Lane County, Oregon. He then departed for California, where on February 4, 1977, he was arrested for an unrelated charge. In the early part of March, 1977, he was sentenced to a California penal institution for parole violation. He was held, pending transfer to another institution, at a penal facility in Chino, California.

On March 25, 1977, the Lane County District Attorney received an inquiry from the Chino facility as to whether a detainer would be lodged against defendant at the California institution. On March 28, the district attorney received a written demand from defendant for trial on any outstanding charges in Lane County. At this time defendant had not been indicted for the Lane County burglary and no detainer had been filed.

Subsequently, on March 30, the district attorney notified the California authorities at Chino that a detainer had not been filed. Defendant was indicted for the burglary on March 30, and on April 1, 1977, a detainer was placed on defendant with the institution at Chino.

Defendant was informed of the detainer by the California prison officials on May 5, 1977, and on May 7, 1977, he signed a form requesting a speedy disposition of the charges under the Interstate Agreement on Detainers, ORS 135.775 *et seq.* This signed request was given to the California prison officials. A prison staff member wrote a memorandum to defendant

informing him that all the required forms had been filed in defendant's central file. The memorandum indicated that the prison staff member believed defendant's March 28, 1977, letter to the Lane County District Attorney operated as a demand to start the running of the period under the Interstate Agreement and he would have to be tried by September 28, 1977. There is no indication in the record that the forms completed by defendant on May 7, 1977, were sent to the district attorney.

Sometime thereafter defendant was transferred to Folsom Prison in Represa, California. On September 28, 1977, the district attorney received a telephone inquiry from a Folsom Prison official regarding whether the district attorney had received the documents required by the Agreement. After a negative response, the Folsom Prison official agreed to contact defendant and complete the necessary papers and forward them to the district attorney.

On October 17, 1977, the district attorney received a copy of the request defendant had filed with the prison on May 7, 1977. On October 19, 1977, the district attorney wrote to defendant and the records officer of Folsom Prison notifying them that under the Agreement the demand alone was not sufficient and that he needed a certificate of inmate status and an offer of temporary custody from the California authorities. ORS 135.775. On November 15, 1977, the district attorney received a letter from the California prison officials stating defendant had twice refused to cooperate in filling out the required forms.

Defendant was paroled on January 30, 1978, and was arraigned on the Lane County charge on February 13, 1978. He was tried and convicted on stipulated facts August 1, 1978. The record does not disclose what occurred, if anything, between November 15, 1977, and January 30, 1978.

The thrust of defendant's first argument is that his right to a speedy resolution of the charge under the

Interstate Agreement on Detainers, ORS 135.775 *et seq,* was violated. The Agreement, which has been adopted by Oregon and California, provides that a person who is serving a sentence in a signatory state, and against whom a detainer has been lodged, may request final disposition of the charges underlying the detainer. In order to invoke the procedures under the Agreement the prisoner must file a request for disposition of the charges with the official of the prison where he is incarcerated (the sending state). The prison officials of the sending state must immediately send the prisoner's request to the receiving state, together with a certificate of inmate status and an offer of temporary custody. If the receiving state does not try the prisoner within 180 days from the time he submitted his request the indictment or information shall be dismissed with prejudice.

Defendant concedes that his request for trial sent to the district attorney on March 28, 1977, was premature because it was submitted prior to a detainer being filed. *See State v. Hibdon,* 36 Or App 97, 583 P2d 579 (1978). He argues, however, that his request of May 7, 1977, filed after the detainer was lodged, was sufficient to commence the running of the 180 day period specified in the Agreement. The difficulty with this contention is that all the required documentation was not submitted with defendant's request for trial. If the request for resolution of the charges does not contain the information required under the agreement the time limitation for trial of defendant does not begin to run. *State v. Cox,* 12 Or App 215, 505 P2d 360, *rev den* (1973).

Defendant also argues that by submitting his request for trial to the California prison officials he did all that was required of him under the Agreement. He contends the California authorities were derelict in their duty to promptly send his request and to submit the certificate of incarceration and the offer of temporary custody.

[417]

We need not decide if the risk of nonperformance of the sending state should fall on the defendant or the State of Oregon. The district attorney, on October 19, 1977, requested that the defendant and the California officials send the missing information. Assuming that the 180 day period expired on November 3, 1977, the district attorney's request for the missing documentation was made prior to the end of the 180 day period. The defendant refused to cooperate with the California prison officials in providing the requisite information. There is nothing in the record to indicate that the prison officials made an unreasonable request for defendant's cooperation or that they required him to sign forms which were unnecessary in order for them to comply with the Agreement.

Defendant explains his lack of cooperation by contending that the information requested by the district attorney on October 19 could not have been supplied in time for him to be brought to Oregon and tried by November 3, 1977. The Agreement provides that the state, for good cause, may be granted a necessary and reasonable extension of time in which to bring the defendant to trial. If the defendant had cooperated with the prison officials in submitting the required information the district attorney could have sought an extension of time in which to bring defendant to Oregon and proceed to trial.

But defendant argues that the request by the district attorney for additional information was merely a demand for "more red tape" and the "nit-picking" response to defendant's request for trial does not comport with policy of the Agreement. That argument misinterprets the need for the required information. The Agreement sets forth the content of the certificate of inmate status: the term of commitment, the time already served, the time remaining to be served, the amount of good time earned, the time of parole eligibility, and any decision of the parole agency respecting the prisioner. This information is an important ingredient of the receiving state's decision

[418]

whether to prosecute the prisoner within the time limitation of the Agreement or to withdraw the detainer. The offer of temporary custody of the sending state is necessary in order for the prisoner to be returned to the receiving state for prosecution. We conclude there is no basis for dismissal of the indictment under the Interstate Agreement on Detainer. *See State v. Cox, supra.*

■ Defendant's second contention is that his right to a speedy trial under the Federal and Oregon Constitutions[1] was violated and the charge should be dismissed. The Supreme Court, in *Barker v. Wingo,* 407 US 514, 92 S Ct 2182, 33 L Ed 2d 101 (1972), set out a four factor test to be utilized in assessing an alleged violation of the constitutional right to speedy trial:

"* * *Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." 407 US at 530.

We utilize the same test in determining if the comparable right given by the Oregon Constitution is denied.

In the present case the delay of 16 months from the date of indictment to trial is not so manifestly excessive as to require dismissal on that basis alone. Defendant made a timely request for trial. There is nothing in the record to indicate the delay was purposely caused by the state or was the result of the prosecutor's bad faith. The principal reason for the delay was the attempt to bring defendant to trial pursuant to the Interstate Agreement on Detainers. As indicated above, defendant's lack of cooperation frustrated that effort. The telling defect in defendant's contention is the absence of any allegation of prejudice. *See State v. Ivory,* 278 Or 499, 564 P2d 1039 (1977). Balancing the criteria set out in *Barker v. Wingo, supra,* the defendant was not denied his right to a speedy trial.

Affirmed.

[1] United States Constitution, Amendment VI, Oregon Constitution, Article I, § 10.