625 P.2d 1208

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Gilbert ALDERETE, Defendant-Appellant.**

**No. 4344.**

Court of Appeals of New Mexico.

June 17, 1980.

Jeff Bingaman, Atty. Gen., Sammy Lawrence Pacheco, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Mary Jo Snyder, Santa Fe, for defendant-appellant.

## OPINION

WOOD, Chief Judge.

Defendant was convicted of unlawful possession of heroin. Section 30-31-23, N.M.S.A. 1978. His claim, that he was denied his right to a speedy trial, is without merit. See *State v. Tafoya*, 91 N.M. 121, 570 P.2d 1148 (Ct.App.1977); *State v. Lucero*, 91 N.M. 26, 569 P.2d 952 (Ct.App.1977);

*State v. Harvey*, 85 N.M. 214, 510 P.2d 1085 (Ct.App.1973). The issue for discussion involves New Mexico's Agreement on Detainers, compiled under Section 31-5-12, N.M. S.A. 1978. Defendant moved to dismiss the indictment, claiming that New Mexico had not complied with the Agreement. He contends the denial of this motion was error.

The pertinent portion of the Agreement is the first sentence in Paragraph A of Article 3. It reads:

A. Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he has caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

Defendant was in prison in California. He asserts the 180-day period, for bringing him to trial in New Mexico, began to run on February 6, 1979 when he allegedly notified California authorities that he desired a final disposition of the New Mexico charges. It is unnecessary to decide, in this case, whether his alleged notice to California authorities started the running of the 180-day period. We assume, but do not decide, that the time period began to run on February 6, 1979.

The trial was originally scheduled for August 6, 1979. Defendant asserts the 180-day period expired on August 5, 1979. This is incorrect. August 5, 1979 was a Sunday. Trial on August 6, 1979 would have been timely. Rule of Crim.Proc. 4(a).

The trial was not held on August 6, 1979. That setting was vacated; trial began on September 24, 1979. The Agreement says "brought to trial within one hundred eighty days * * *." Because he was not brought to trial within that time period, defendant claims he was entitled to dismissal of the indictment.

Defendant overlooks additional language in the Agreement: "[F]or good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance."

On June 8, 1979, by written notice, defendant raised the issue of insanity at the time of commission of the offense. On June 26, 1979 the State moved for a psychiatric examination. This motion was pending when, on July 6, 1979, notice was given that trial would be August 6, 1979.

The State's motion for a psychiatric examination was heard on July 20, 1979. Defendant opposed the motion, taking the position that the State was not entitled to an examination until defendant decided whether he would, in fact, present an insanity defense at trial; that defendant was having his own examination but it was not concluded. The trial court granted the State's motion but, concerned with the trial date, asked that the examination be expedited.

The examination was not expedited. The record contains orders for the transportation of defendant in connection with defendant's examination on August 3 and 14, 1979. The report in connection with the State's examination was not received until August 21, 1979. The record establishes that the case was not tried on August 6, 1979 because of delay in examining defendant.

Defendant concedes there was reasonable grounds for not trying the case on August 6, 1979. He argues, however, that there was no continuance; that if there was a continuance, the continuance did not occur in open court with counsel present, and if there was a continuance, it was not necessary.

■ There is no formal order continuing the August 6th trial date, but it is uncontradicted that there was a continuance. The Agreement does not require a formal order, although such would be helpful. It is the fact of continuance that is important and, in fact, there was a continuance because the case was not tried as scheduled on August 6, 1979.

■ The record is ambiguous as to whether the August 6th trial date was vacated in open court with counsel present. In arguing for dismissal, defense counsel seemed to indicate that "the State requested the delay" at the time of the hearing on its motion seeking the psychiatric examination. This record does not show the continuance was not granted in open court; the record is insufficient to establish defendant's contention. *State v. Wingate*, 87 N.M. 397, 534 P.2d 776 (Ct.App.1975). Defendant had the burden of providing a sufficient record. *State v. Cranford*, 92 N.M. 5, 582 P.2d 382 (1978).

■ Defendant claims the continuance was not necessary. Inasmuch as the trial court's admonition to expedite the examination went unheeded, and inasmuch as defendant was attempting to delay the State's examination, we cannot say, as a matter of law, that the continuance was unnecessary.

■ Defendant also seems to claim that the continuance was not granted before the 180-day period expired. This is incorrect; the continuance within 180 days is established by the fact that the August 6th trial setting was vacated.

The judgment and sentence are affirmed.

IT IS SO ORDERED.

WALTERS, J., concurs.

LOPEZ, J. (dissenting).

LOPEZ, Judge (dissenting).

I respectfully dissent. Alderete's notice to the California authorities in early February of 1979 that he had filed a demand for trial in New Mexico started the running of the 180 day period within which the State

of New Mexico had to bring him to trial under the Agreement on Detainers, § 31–5–12, N.M.S.A. 1978. He was not tried in New Mexico within that time limit; nor does the record show that a continuance was granted in open court before the 180 days had expired as provided in Paragraph A, Article 3 of the Agreement. Since the State failed to try him within the applicable time limit, his conviction should be reversed, and the indictment dismissed with prejudice.

1. *Alderete started the running of the 180 day period on February 6th or 8th 1979 when he notified the California prison authorities that he wanted to stand trial on the New Mexico charges against him.*

Alderete claims that he requested a trial on the New Mexico charges and that, therefore, Paragraph A of Article 3, cited in the majority opinion, applies. This paragraph requires that three events must have transpired before the 180 days time limit is activated: 1) the person must have entered upon a term of imprisonment; 2) a detainer must have been lodged against the prisoner; and 3) the prisoner must have caused written notice of his place of imprisonment and his request for final disposition to be delivered to the prosecuting attorney and the appropriate court in the charging state. As of December 18, 1978, when Alderete was sentenced to three years imprisonment on local charges in California, he "entered upon a term of imprisonment" for purposes of this statute. The record shows that a detainer was lodged against him by the State of New Mexico on or about November 8, 1978, he having been arrested and imprisoned in California two days earlier. The State, citing *State v. Hibdon*, 36 Or.App. 97, 583 P.2d 579 (1978), and *People v. Daily*, 46 Ill.App.3d 195, 4 Ill.Dec. 756, 360 N.E.2d 1131 (1977), argues that the detainer must be lodged after the defendant has been transferred to the institution where he will serve his sentence, and that consequently, the November detainer cannot be considered.

I do not agree. The cases cited do not help the State, as they stand merely for the proposition that a detainer must have been lodged against a prisoner before any request by him for a speedy trial can activate Article 3. In the present case, defendant claims that he notified the California prison authorities of his desire for a speedy trial on February 6, 1979. This is well after the first detainer was lodged.

The important question is whether the third requirement was met, that is, whether Alderete "caused to be delivered to the prosecuting officer and the appropriate court * * * written notice of his request for a final disposition * * * of the indictment" Article 3, *supra*. Alderete alleges three events which should have triggered the 180 day period: 1) his written demands to the California authorities for a trial in New Mexico; 2) his oral communication on February 6, 1979, with his corrections officer, Mr. Young, informing him that he desired to have, and had already demanded, final disposition of the New Mexico charges against him; and 3) his letter to Judge Traub in Albuquerque on March 19, 1979, requesting that he be tried in New Mexico. Since the California authorities had no record of Alderete's alleged written demands to them, the trial court properly found that he had failed to establish their existence. However, these authorities did have on record an Institution Programming Summary filed February 8, 1979, which contained information from the February 6, 1979 interview, including the fact that Alderete had requested to be tried on the New Mexico charges.

The question, then, is whether the defendant has fulfilled his obligation under Article 3 of the Agreement when he has orally informed his corrections officer of his desire to be tried on the out of state charges against him, and that officer has filed a written report with the local prison authorities mentioning the defendant has filed a demand for trial on these charges. Paragraph B of Article 3 requires that the defendant serve written notice of his desire to demand a trial in the charging state upon the appropriate custodial authorities.

B. The written notice and request for final disposition referred to in Subarticle A shall be given or sent by the prisoner to the warden, commissioner of corrections or other official having custody of him who shall promptly forward it . . . to the appropriate prosecuting official and court.

\*   \*   \*   \*   \*   \*

I believe that the defendant's oral notification to his corrections officer, who then committed the notice to a writing which was filed with the custodial authorities, satisfies the written notice requirement of Paragraph B. This Paragraph does not require that the prisoner actually make the writing, but only that written notice shall be given or sent by him to the prison authorities. The procedure employed in the instant case is very similar to the procedure regularly followed in federal institutions. The federal government has also adopted the Agreement on Detainers; and in federal prisons, the prisoner's caseworker gives the prisoner a form which he fills out and returns to the caseworker. The institution then forwards the demand to the proper authorities in the charging state. Meyer, *Effective Utilization of Criminal Detainer Procedure*, 61 Iowa L.Rev. 659 (1976). A notice requirement may be satisfied by proof of actual notice where there is substantial compliance with the statutory requirements. *State v. Barnes*, 273 Md. 195, 328 A.2d 737 (1974). Here there was both substantial compliance with the requirements, and proof that the California authorities had actual notice of defendant's demand. Such an interpretation of Paragraph B comports with Article 9 of the Agreement which directs that the Agreement shall be liberally construed so as to effectuate its purpose. New Mexico has recognized that the remedial nature of the Agreement requires that it should be construed liberally in favor of the detainee. *State v. Quiroz*, 94 N.M. 517, 612 P.2d 1328 (Ct.App.1980), *cert. denied* April 18, 1980. Alderete fulfilled his obligation under Article 3 on February 6, 1979, when he informed his corrections officer in California that he had filed a request for a final disposition of the New Mexico charges.

A second problem appears with respect to Alderete's February 6th notice, however, as the California authorities failed to forward the request to New Mexico. Consequently, the New Mexico authorities did not know that Alderete had requested disposition of the New Mexico charges until March 26, 1979, when Judge Traub received Alderete's letter. The next question is, therefore, what date should trigger the 180 day time limit of Article 3. There are two lines of cases on this point. Some states hold that the 180 days should run from the time the defendant notifies the prison authorities where he is incarcerated of his desire to stand trial in the charging state. *Pittman v. State*, 301 A.2d 509 (Del.1973); *Burns v. State*, 578 S.W.2d 650 (Tenn.Cr.App.1978). *See, People v. Masselli*, 17 A.D.2d 367, 234 N.Y.S.2d 929 (1962), *aff'd*, 13 N.Y.2d 1, 240 N.Y.S.2d 976, 191 N.E.2d 457 (1963). In other states, the date that the charging state receives the prisoner's request triggers the 180 day statutory period. *Commonwealth v. Bell*, 442 Pa. 566, 276 A.2d 834 (1971); *State v. Ternaku*, 156 N.J.Super. 30, 383 A.2d 437, *cert. denied*, 77 N.J. 479, 391 A.2d 494 (1978); *Commonwealth v. Fisher*, 451 Pa. 102, 301 A.2d 605 (1973).

Paragraph D of Article 3 further states:

D \* \* \* The warden, commissioner of corrections or other official having custody of the prisoner shall forthwith notify all appropriate prosecuting officers and courts in the several jurisdictions within the state to which the prisoner's request for final disposition is being sent of the proceeding being initiated by the prisoner. \* \* \* \*

The failure of the incarcerating state to following the procedures prescribed in the Agreement on Detainers is not attributable to the defendant. A defendant's right under the Agreement to a trial within 180 days cannot be forfeited by the inaction of the prison authorities in the incarcerating state. *Rockmore v. State*, 21 Ariz.App. 388, 519 P.2d 877 (1974); *Pittman, supra; People v. Esposito*, 37 Misc.2d 386, 238 N.Y.S.2d

.. 

460 (1960); *Burns, supra; Nelms v. State,* 532 S.W.2d 923 (Tenn.1976). *See, Masselli, supra.* The defendant "should not be charged with the responsibility of insuring that his captors have complied with provisions of the law when he has no control over their activities." *Nelms, supra,* 532 S.W.2d at 926–27. The 180 day period commenced in the instant case when Alderete notified the California prison authorities that he wanted to be brought to trial on the New Mexico charges pending against him. This occurred either on February 6, 1979, when Alderete spoke to Mr. Young, or on February 8th, when a written report of the request was filed. It is not necessary to decide which date applies, as Alderete was not brought to trial within 180 days of either date.

2. *The record does not show that a continuance was granted for good cause shown in open court with the prisoner or his counsel present within the 180 day period.*

Paragraph A of Article 3, which sets out the 180 day rule, also provides for flexibility in administering it by allowing the court with jurisdiction in the charging state (here, New Mexico) to grant any necessary or reasonable continuance for good cause shown in open court, the prisoner or his counsel being present. The last question is whether or not such a continuance was granted.

After Alderete was returned to New Mexico, his trial was set for August 6, 1979. This was within the 180 day time limit, whether that period commenced running on February 6th or 8th of 1979. The trial was, however, postponed until September 4, 1979. The record contains neither a motion nor an order continuing the trial from August 6th to September 4th, but it is clear that the trial date was postponed until September. On September 4th, defendant's motion to dismiss for failure to comply with the 180 day provision of Article 3 was heard. On September 5th, the court denied the motion and granted a continuance, there being no time to proceed to the trial of the case before September 17th. At defendant's request, the trial date was fur-

ther postponed until September 24th. There is no question that the continuance of September 5th was granted in open court for good cause shown, and otherwise as required under Paragraph A of Article 3. There is a question, however, of whether the continuance was timely. Again the jurisdictions are divided. I would follow those which require that the request for a continuance be made within the 180 days. *Fisher, supra; State v. Patterson,* 256 S.E.2d 417 (S.C.1979). *Contra, State v. Hamilton,* 268 N.W.2d 56 (Minn.1978); *State v. Lippolis,* 55 N.J. 354, 262 A.2d 203 (1970).

This is the proper interpretation of Paragraph A for two reasons. First, the overall purpose of the entire Agreement is to encourage the party states to act quickly in disposing of untried charges. Article 1 of the Agreement on Detainers. The 180 day time limit was included in the Agreement to effectuate this ultimate aim. If the State can obtain a continuance any time after the expiration of the 180 days, the requirement that the State act within that time period is frustrated. Secondly, Paragraph A of Article 6 of the Agreements sets out the one time when the running of the 180 days shall be tolled—namely, whenever, and for as long as, the prisoner is unable to stand trial. There is no provision that the time period may be tolled whenever, in retrospect, good cause for tolling it may be shown.

I have no quarrel with the precept that delays incurred with the defendant's acquiescence or as an accommodation to him are not to be included in computing the time limits under the Agreement. *People v. Grubbs,* 39 Colo.App. 436, 570 P.2d 1299 (1977). The delay from August 6th to September 4th was not agreed to by the defendant. On July 20th, he opposed the granting of the State's motion for a psychiatric evaluation by the Court Clinic, which was, apparently the cause of the delay. Nor was this motion an accommodation to the defendant. Although the State requested the evaluation in response to defendant's notice, filed June 8, 1979, of intent to claim insanity and lack of capacity

to form specific intent, the motion of July 20th did not aid the defendant. To construe this motion as an accommodation to the defendant would mean that every motion filed by the State in response to motions filed by the defendant could be considered as accommodating the defendant. Such an interpretation would enlarge the 180 day period within which the State must bring the defendant to trial in a manner not intended by the authors of the statute. Had the July 20th motion been granted at defendant's request, any delay caused by the granting of the motion would not be included in computing the 180 day period. Since this was not the case, however, the delay cannot be imputed to the defendant. Nor can he be said, in the circumstances, to have consented to it.

It was incumbent on the State to move for a continuance in open court before August 6th. There is no evidence in the record before us that it did so. In *Commonwealth v. Klimek*, 416 Pa. 434, 206 A.2d 381 (1965), the Pennsylvania Supreme Court held that a motion for severance would not be equated with a motion for a continuance under Article 3 of the Agreement on Detainers. I would refuse to equate a motion for a psychiatric examination with a motion for a continuance under the same provision.

When the State fails to bring the defendant to trial within the time provisions of the Agreement, the indictment against him must be dismissed with prejudice. Paragraph C of Article 5 of the Agreement on Detainers. The State having failed either to bring Alderete to trial, or to obtain a continuance in open court within 180 days of his request for trial, the indictment against him should be dismissed.