692 P.2d 1336

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Titus Edwin AARON,
Defendant-Appellant.**

**No. 7266.**

Court of Appeals of New Mexico.

Nov. 27, 1984.

Paul Bardacke, Atty. Gen., Elizabeth Major, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Janet Clow, Chief Public Defender, Henry R. Quintero, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

NEAL, Judge.

Defendant appeals his conviction on twenty-one counts of fraud over $100 but less than $2,500, and five counts of issuing worthless checks.

Defendant raises six issues on appeal. We discuss the claim that defendant was denied a timely trial as required by the Interstate Agreement on Detainers and answer other issues summarily. Other issues raised in the docketing statement but not briefed on appeal are deemed abandoned. *State v. Martinez*, 100 N.M. 532, 673 P.2d 509 (Ct.App.1983). We affirm.

Defendant and his girlfriend opened various checking accounts in Albuquerque under the names of Darrel Wolf and Carlie Palmer or Gary Holstead and Crystal Kotch. The accounts were opened with $300 and, because cash was taken back, the accounts had less than $300 in them. Defendant and his girlfriend then wrote checks to businesses or went to different branches of the banks and cashed checks, totalling over $3,000. This was all done before the checks cleared the banks. Thus, defendant obtained something of value for all checks. Few witnesses could identify the defendant as the person cashing the checks. He was identified by his fingerprints on the checks and by his handwriting.

Further facts will be stated in relation to each issue.

## I. Interstate Agreement on Detainers.

Defendant claims the trial court committed reversible error in failing to commence his trial on the merits as required by the Interstate Agreement on Detainers and within 180 days after defendant gave notice to the prosecutor and the court of his demand for a timely final disposition of the charges against him. Defendant contends the trial court's granting of continuances was improper. Defendant was in prison in California on an unrelated charge when he learned of his indictment in New Mexico. He requested disposition of the New Mexico charge pursuant to the Interstate Agreement on Detainers (IAD). The IAD, contained in nine articles, (IAD), NMSA 1978, Section 31–5–12 (Repl.Pamp. 1984), is a uniform law enacted by at least forty-six states, the District of Columbia, and the federal government to facilitate the disposition of criminal charges in one state when the accused is incarcerated in another jurisdiction. *People v. Beamon*, 83 Mich. App. 121, 268 N.W.2d 310 (1978).

Article 1 sets out the findings and purposes of the IAD. Because detainers based on untried charges lodged against prisoners and the difficulties in securing speedy trials to these prisoners produce uncertainties which obstruct treatment and rehabilitation programs, it is the policy of

the party states to encourage the expeditious and orderly disposition of outstanding charges against prisoners who are incarcerated in other states. The IAD has two purposes: prompt resolution of the charges so that the prisoner will know his status, and minimization of the interruption to his rehabilitative program in the sending state. *United States v. Chico,* 558 F.2d 1047 (2d Cir.1977). To these ends, the IAD requires that charges be resolved within a certain time limit and during one trip to the receiving state. Article 9 states that the IAD shall be liberally construed in favor of the prisoner to effect its purposes. *State v. Quiroz,* 94 N.M. 517, 612 P.2d 1328 (Ct. App.1980).

Articles 3 and 4 contain the respective procedures for when the prisoner or the prosecutor requests final disposition of an untried charge. Article 3(A) provides:

A. Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he has caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

Thus, if a prisoner demands disposition he must be brought to trial within 180 days of the delivery of the demand unless there is a continuance or tolling as determined by the court having jurisdiction of the matter. If he is not, his charges are to be dismissed with prejudice. Art. 5(C); *United States v. Ford,* 550 F.2d 732 (2d Cir.1977), *aff'd sub nom. United States v. Mauro,* 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978). Our prior cases under the IAD have established that the continuance must be granted within the original 180 days. *State v. Shaw,* 98 N.M. 580, 651 P.2d 115 (Ct.App.1982). *See State v. Alderete,* 95 N.M. 691, 625 P.2d 1208 (Ct.App. 1980). Here there is no question that the grant of the continuance was timely. The only issue is whether there was good cause for the court to grant a necessary or reasonable continuance under Article 3(A).

**Facts.**

Defendant was indicted for one count of fraud on February 3, 1981. He learned of the indictment while in custody in California on an unrelated matter. He requested disposition on May 24, 1982. On August 20, he was transferred from California to Bernalillo County. On November 20, 1982, the matter came before the court on the state's motion for continuance. Although a pending motion for handwriting exemplars was discussed as a reason for the continuance, the court granted the continuance because of the absence of judges to hear the case. Defendant's cases were assigned to then-Judge Stowers. Judge Baca recited that Judge Stowers had been elected to the supreme court. However, because of an early vacancy on the supreme court, Judge Stowers had been appointed to fill the vacancy upon his election instead of waiting until January to take office. Judge Stowers was not physically present in Albuquerque. He was sitting on supreme court cases in Santa Fe. The supreme court had not assigned anyone to handle Judge Stowers' cases. Every judge in the Second Judicial District had been assigned to do emergency work for Judge Stowers. No new criminal cases were being assigned to Judge Stowers' division. Judge Baca took time out of a jury trial to hear the matter. All other judges had a

full complement of cases to hear. For these reasons, the continuance was granted for sixty days and Judge Baca said he would try to get the chief justice of the supreme court to assign a judge to specially hear this case.

■ The one count indictment was dismissed and the multi-count indictment, on which defendant was tried, was obtained. The new case was assigned to Judge Mescall, but in accordance with a local court rule requiring all cases involving a person to be assigned to one division, Judge Mescall transferred the case to Judge Stowers' division. The purpose of the rule is to coordinate resolution of the various charges as well as to allow the judge to follow up on a defendant. The defendant objected to the transfer. The basis for the state's second motion for a continuance was that there was still not a judge to take over Judge Stowers' calendar. Following extensive argument on a variety of matters, Judge Baca granted the continuance. The problem was still Judge Stowers' absence. Although a new judge had been appointed, he would not take his oath until January 14 and begin work on January 17. A continuance was therefore granted until March 7. At all material stages, defendant objected to the grant of continuances, claiming that they violated his rights under the agreement and that no good cause was shown. Defendant's trial was held within this continuance, on March 7, 1982.

Under the IAD, a defendant must be brought to trial within 180 days after he has given the prescribed notice for a request for final disposition of the indictment and within 120 days of his arrival in the receiving state. However, both sections provide the court may grant any necessary or reasonable continuance "for good cause shown in open court, the prisoner or his counsel being present." *Id.* at Article 3, § A(3) and Article 4, § C. Defendant argues that the trial court committed reversible error when it granted the state's motion as continuance because the state failed to establish good cause for the continuance.

■ It is clear that good cause is not shown by mere recitation of the fact of crowded dockets. *Brown v. Wolff,* 706 F.2d 902 (9th Cir.1983). In that case the state contended that court congestion constituted good cause for extending the 180 day period. The court concluded that "court congestion may in some circumstances constitute good cause for continuance under the IAD * * *" 706 F.2d at 906. The court found that the circumstances in that case did not constitute good cause. "[W]here the trial judge has not attempted to transfer the case to another judge or to adjust or increase the criminal calendar, the weight of authority supports the view that the court is not sufficiently congested to constitute good cause for extension." *Id.* The circumstances in *Brown* were that the judge merely set the date by the first open date on the calendar. In *Ford* one judge resigned, the case was reassigned and sua sponte postponed without explanation. On the date set for trial the judge was involved in another trial, so it was postponed. Then, due to a program to dispose of all civil cases, the judge sua sponte postponed the trial again. Under such circumstances good cause was not shown. 550 F.2d at 743.

In *People v. Miller,* 34 N.Y.2d 336, 357 N.Y.S.2d 457, 313 N.E.2d 761 (1974) the continuance was held not to be for good cause when due to court congestion and a local court rule stating only prisoners held for crimes committed in the venue county would be tried in the particular month the detainee was scheduled to go to trial. The court stated that congestion and court rules of precedence while cognizable factors, were insufficient to justify the continuance under the facts of that case.

In other cases the requisite circumstances have been found to justify an extension beyond the 180 day limit. In *Commonwealth v. Carrillo,* 5 Mass.App. 812, 361

N.E.2d 415, 416 (1977), the continuance was held to be for good cause because the term of the court was ending and there was a break before the new term began. In *People v. Watson*, 650 P.2d 1340 (Colo.App. 1982), good cause was shown when the trial judge became ill.

■■■■ The purpose of the IAD is remedial, and it should be liberally construed in favor of prisoners within its purview. Art. 9; *State v. Mason*, 90 N.J.Super. 464, 218 A.2d 158 (1966). Even so, we believe the continuance was reasonable and for good cause in the particular circumstances of the case.

Under *Wolff*, the assigned judge must attempt to transfer the case or to adjust the criminal calendar if a full docket prevents trial of the case within the time limit. Here, the situation was unusual; the assigned judge was appointed to the supreme court and all other judges in the district had full dockets. An attempt was made to transfer the case. The facts are unlike those in *Brown* where the case was merely set as the first open date on the calendar, or *Ford*, where the judge sua sponte postponed the trial once and later postponed it again based on a program to hear civil cases first. Unlike the rules of precedence in *Ford* and *Miller*, the local rule which required Judge Mescall to reassign the case to Judge Stowers' division was designed to have one judge hear all cases involving a single defendant so the disposition of all matters are coordinated, a principle not unlike the purpose of the IAD.

■■■■ The defendant also raises a collateral issue regarding the continuance. He contends that there was no evidence presented at the hearing for the continuance. He cites *State v. Haar*, 94 N.M. 539, 612 P.2d 1350 (Ct.App.1980), for the proposition that statements of counsel do not establish the record. In response we would note that there is no requirement for evidence in order to make a showing of good cause. *See State v. Beck*, 97 N.M.

312, 639 P.2d 599 (Ct.App.1982). In established practice such a showing is often made by statement of counsel. Judge Baca was administrative judge for the district; he spoke at the hearing about the reasons necessitating delay. The defendant was present, the hearing was held in open court, and the defendant had no objection to the manner of presentation below. The method of showing good cause was not improper.

## II. Issues Summarily Answered.

The defendant raises four other issues on appeal. All may be summarily answered by New Mexico law.

### a. Prosecutor's Comment.

Defendant argues that a statement by the prosecutor during his closing argument constituted an impermissible comment on the defendant's silence at trial and thus fundamental error under *State v. Ramirez*, 98 N.M. 268, 648 P.2d 307 (1982). The prosecutor said, "Ask yourself why there wasn't an expert on the stand there for the defense," referring to testimony by a handwriting expert. When the defense moved for a mistrial, the court admonished the jury that defendant had no obligation to present witnesses. The mistrial motion was denied.

■■■■ In *Ramirez* the prosecutor commented on the defendant's constitutionally protected right to remain silent. Here the prosecutor did not; he commented on failure to produce witnesses, which is permissible. *State v. Ennis*, 99 N.M. 117, 654 P.2d 570 (Ct.App.1982).

### b. Bill of Particulars.

The defendant also contends that he was not provided with a bill of particulars, and, under *State v. Campos*, 79 N.M. 611, 447 P.2d 20 (1968), failure to provide a bill of particulars is error. We disagree.

■■■■ Initially, we note that the bill of particulars has been replaced by a state-

ment of the facts under NMSA 1978, Crim. P.R. 9 (Repl.Pamp.1984). The committee comment to the rule states that the rule is designed to avoid the technicalities of the bill of particulars while affording the defendant his constitutional right to know the nature and cause of the accusation under N.M. Const. art. 2, § 14. Here the defendant was provided with grand jury tapes which he admitted he listened to. Also, at the arraignment on January 28, 1983, each count of the indictment as amended, was read to him. He was informed of the nature and character of the charges. The indictment contained the facts on which the charges were based. The purpose of a statement of facts is to provide the defendant with enough information about the nature and character of the crime charged to prepare his defense. *State v. Martin*, 94 N.M. 251, 609 P.2d 333 (Ct.App.1980). As tapes are an adequate alternative to a typed transcript, *State v. Johnson*, 99 N.M. 682, 662 P.2d 1349 (1983), and, under the former law a bill of particulars need not be given if a defendant is provided with a grand jury transcript, *State v. Sheets*, 94 N.M. 356, 610 P.2d 760 (Ct.App.1980), there was no error, as defendant was provided adequate information upon which to prepare his defense.

### c.  Offer of Proof.

Defendant subpoenaed Patricia Kelan, a grand juror and employee of one of the victim banks. The state claimed that she had no personal knowledge of the case except through her service on the indicting grand jury. She requested the court determine if there was any purpose in her being called to testify. Defendant claimed that she knew some of the bank officers who were witnesses against him and could provide evidence of bias and prejudice. The court asked for his good-faith basis for showing bias. From his reply it is clear he had no knowledge that she could testify regarding prejudice or bias. Earlier three bank employees had testified and the de-

fense did not seek to cross-examine to show bias.

■■■ The court refused to allow the defendant to call Ms. Kelan on the ground that a grand juror is incompetent as a witness under NMSA 1978, Evid.Rule 606(a). The rule applies to jurors. We interpret Evid.Rule 606(a) to also apply to grand jurors.

■■■ Further, defendant made no showing the testimony would be relevant. Defendant relies on *State v. Shaw*, 90 N.M. 540, 565 P.2d 1057 (Ct.App.1977) for the proposition that the right to tender proof is almost absolute, limited only by the court's discretion to restrict repetitious offers. However, there is no requirement that the tender must be in the form of questions and answers. NMSA 1978, Evid.R. 103. The purpose of an offer of proof is to advise the court of the nature of the evidence to be presented. *Shaw*. Here the court asked defendant what the witness would say that would show bias or prejudice. All defendant could state was that Ms. Kelan knew the witnesses and may have discussed the case. The allegations were nothing more than speculation. He was attempting to engage in court-supervised discovery, which is not a function of an offer of proof or a trial testimony. Evid.R. 103 and 401. *Cf. State v. Herrera*, 92 N.M. 7, 582 P.2d 384 (Ct.App.1978). Ms. Kelan was properly excluded as a witness as the defendant made no showing her testimony would be relevant.

### d.  Out-of-State Witness.

Defendant complains about the court's allowance of the testimony of three police officers from other jurisdictions who had had contact with defendant. One took a handwriting exemplar from defendant, which was introduced into evidence. Another was in charge of records, and through him, fingerprint impressions with signatures and photos of the person making the prints were introduced. The identi-

fication on these items was Darrel Wolf, an alias used by defendant. The final witness met defendant, who introduced himself as Thomas Young, and obtained identification from him, which was admitted into evidence. The state was careful to caution its witnesses not to reveal that they were officers or that they knew defendant in any official capacity.

 The handwriting, prints, and photos were relevant and admissible to directly prove identity in this case, Evid.R. 401. The fact that defendant used the name Darrel Wolf before was relevant and admissible circumstantially under NMSA 1978, Evid.Rule 404(b) (Repl.Pamp.1983). The fact that he used false identification for Thomas Young was also relevant and admissible circumstantially under Rule 404(b) to prove identity, plan, preparation, intent, or knowledge.

The admission of evidence is discretionary with the trial court. *State v. Stout*, 96 N.M. 29, 627 P.2d 871 (1981). Contrary to defendant's contention, *State v. Fuson*, 91 N.M. 366, 574 P.2d 290 (Ct. App.1978), does not hold that evidence is admissible only when there is no other way of proving a fact. Cumulative evidence, even if prejudicial, may be admitted in the discretion of the trial court. *See, e.g. State v. Montoya*, 101 N.M. 424, 684 P.2d 510 (1984). Because of the care which the state took not to inform the jury of the source of the documents (police records) and because defendant's identity was the key issue in the case, discretion was not abused in admitting the evidence of the out-of-state witnesses. *Compare State v. Martinez*, 94 N.M. 50, 607 P.2d 137 (Ct. App.1980), (discretion was abused when state got defendant's handwriting from a person identified to jury as defendant's parole officer).

**e. Failure to Disclose.**

Defendant complains that the state's failure to disclose a photo array denied him a fair trial. His argument is that, had he discovered the suggestiveness of the photo array prior to trial, he could have moved to suppress identifications. He did move to suppress identifications based on a photo array. Moreover, he appeared to have police reports which referred to the photo arrays. Finally, a detective had shown his stand-by counsel the photos during a motions hearing. The contention is without merit.

We affirm.

IT IS SO ORDERED.

DONNELLY, C.J., and ALARID, J., concur.