Argued and submitted March 31, reversed June 24, reconsideration denied October 28, petition for review allowed November 24, 1992 (314 Or 727)

**STATE OF OREGON,**
*Respondent,*

*v.*

**ROBERT F. BURSS,**
*Appellant.*

(89CR0433TM; CA A67651)

833 P2d 1300

Sally L. Avera, Public Defender, Salem, argued the cause and filed the brief for appellant.

Janet A. Klapstein, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

WARREN, P. J.

## WARREN, P. J.

Defendant appeals his conviction, assigning as error the denial of his motion to dismiss. We reverse.

Defendant was indicted in Deschutes County on June 6, 1989. Approximately one week later, he was arrested in Washoe County, Nevada, and a hold was placed on him based on the Deschutes County charges. Subsequently, he was convicted on unrelated charges and sentenced to serve time in a Nevada penitentiary.

On April 3, 1990, while serving his Nevada sentence, defendant signed a document entitled "INMATE'S NOTICE OF PLACE OF IMPRISONMENT AND REQUEST FOR DISPOSITION OF INDICTMENTS, INFORMATIONS OR COMPLAINTS" and sent the document to the warden of the Nevada penitentiary. On May 11, 1990, the Deschutes County District Attorney received the document, along with two other supporting documents: "CERTIFICATE OF INMATE STATUS" and "OFFER TO DELIVER TEMPORARY CUSTODY." On November 5, 1990, defendant moved for dismissal of the Deschutes County indictment on the ground that his rights under the Interstate Agreement on Detainers (IAD), which is codified as ORS 135.775, had been violated. The court denied that motion and convicted defendant after a trial on stipulated facts.

■ IAD permits a prisoner in one signatory jurisdiction — the sending state — against whom a detainer has been lodged by another signatory jurisdiction — the receiving state — to require the prosecuting authority of the latter to provide a speedy trial on the charges underlying the detainer.[1] Article III provides, in part:

> "(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, the prisoner shall be brought to trial within 180 days after the prisoner *shall have caused to be delivered to the prosecuting officer* and the appropriate court of the prosecuting officer's

---

[1] Both Nevada and Oregon are signatory jurisdictions.

jurisdiction written notice of the place of imprisonment and the request of the prisoner for a final disposition to be made of the indictment, information or complaint.

"(b)  The written notice and request for final disposition referred to in paragraph (a) of this Article shall be given or sent by the prisoner to the warden or other official having custody of the prisoner, *who shall promptly forward it* together with the certificate to the prosecuting official and court by registered or certified mail, return receipt requested." (Emphasis supplied.)

Article V provides that, if the time limit in Article III is not complied with, the charges must be dismissed.

■     Defendant contends that the court erred in denying his motion to dismiss, because, by November 5, more than 180 days had passed since April 3, 1990, the date on which he sent his speedy trial notice to the warden of the Nevada penitentiary. He argues that, by fully complying with his obligation under Article III(b), he "caused to be delivered to the prosecuting officer" his request for final disposition. The state argues that the 180-day time limit of Article III did not begin to run until it actually received defendant's notice on May 11, 1990.[2]

Article III(a) provides that the state must bring a defendant to trial within 180 days of when the defendant has "caused [the required documents] to be delivered to the prosecuting officer." Article III(b) provides that a defendant's sole obligation under IAD is to send a request for a speedy trial to the warden of the penitentiary in the sending state. To invoke the protections of IAD, a prisoner must strictly comply with that requirement. *State v. Smith*, 64 Or App 588, 592, 669 P2d 368 (1983). Actual notice to the prosecuting authority in the receiving state, by itself, is not sufficient to invoke those protections, because IAD's purpose

"is furthered by requiring the warden or other official to forward the prisoner's notice and request, together with

---

[2] We have not previously decided whether the 180-day limit of Article III begins to run when a prisoner sends notice to the warden in the sending state or, rather, when that notice is received by the receiving state. *See State v. Miebach*, 52 Or App 709, 716, 629 P2d 1312 (1981); *State v. DeMotte*, 42 Or App 413, 418, 600 P2d 923 (1979).

other information about the sentence being served, to the prosecuting jurisdiction." 64 Or App at 592.

The provisions of Article III(b) logically relate to those of Article III(a). Because Article III(b) establishes a defendant's sole obligation under IAD, and the defendant can do no more than that, we conclude that defendant "caused [the required documents] to be delivered" when he sent his request for a final disposition to the warden of the penitentiary in the sending state. By so concluding, we align Oregon with those jurisdictions that recognize that a prisoner is not to be "penalized if the prison officials fail to carry out their duties under the agreement." *People v. Marshall*, 170 Mich App 269, 428 NW2d 39 (1988); *see also Pittman v. State*, 301 A2d 509 (Del Supr 1973); *McBride v. United States*, 393 A2d 123 (DC App 1978), *cert den* 440 US 927.

> "The receiving state, having set the provisions of the Agreement in motion [by filing a detainer], must bear the burden of assuring that its provisions are enforced in the sending state. If the serious consequence of dismissal results automatically from the failure of the correctional officials in the imprisoning state to comply, 'pressure [will] soon be brought to bear on the negligent officials from their administrative superiors as a result of protests from the other state.' " *People v. Lincoln*, 42 Colo App 512, 516, 601 P2d 641 (1979). (Citation omitted.)

We recognize that several jurisdictions have concluded that the 180-day limit does not begin to run until the district attorney in the receiving state actually receives the defendant's request for a speedy trial. *See State v. Braswell*, 194 Conn 297, 481 A2d 413 (1984), *cert den* 469 US 1112 (1985); *Sweat v. Darr*, 235 Kan 570, 648 P2d 347 (1984); *State v. Ternaku*, 159 NJ Super 30, 34, 383 A2d 437, *certification den* 77 NJ Super 479, 391 A2d 494 (1978). The linchpin of those decisions is that the "caused to be delivered language" of Article III(a) is clear and unambiguous and provides that actual receipt is the event from which the 180 days begin to run.[3] However, those cases fail to reconcile that

---

[3] In *State v. Liefke*, 101 Or App 208, 211, 789 P2d 700 (1990), we held that the time limit under a different speedy trial provision began to run when the district attorney actually received the defendant's request for a speedy trial. That case is inapposite, because the controlling statute clearly provided that the district attorney

conclusion with the provisions of Article III(b), which require a defendant only to send a request for a speedy trial to the warden of the penitentiary of the sending state. Moreover, by so construing Article III(a), those cases frustrate the spirit and letter of IAD.

Article IX of IAD mandates that its provisions be liberally construed to effectuate its purpose. IAD is intended to encourage the expeditious disposition of criminal charges. Art I; *United States v. Mauro*, 436 US 340, 351, 98 S Ct 1834, 56 L Ed 2d 329 (1978). It seeks to further that goal, because

> " 'charges outstanding against a prisoner, detainers based on untried indictments, informations, or complaints and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation.' " 436 US at 351 (quoting Article I of IAD).

To further its purpose, the IAD carefully defines the obligations and rights of the parties involved whenever a detainer is lodged.

After a prisoner complies with Article III(b)'s requirements, the subsequent progress of the detainer proceedings is within the control of the warden of the sending state and the prosecuting authority of the receiving state. If either of those parties fails to comply with their duties under Article III, the defendant's rights under the IAD are completely frustrated. When the state acts as a receiving jurisdiction, its failure to comply with its obligations under Article III mandates dismissal of the charges. *See State v. Arwood*, 46 Or App 653, 612 P2d 763 (1980).

IAD mandates cooperation. Each signatory state relies on the others to fulfill its obligations to advance the purpose of the agreement.[4] Regardless of which state,

---

"shall, within 90 days *of receipt* of the notice, bring the inmate to trial * * *." ORS 135.763(1).

[4] In *State v. Braswell, supra*, the court acknowledged, as we do, that, under the IAD, the warden of the sending state is the agent of the prosecutor in the receiving state. However, that court failed to explain why notice to that agent did not constitute notice to the principal sufficient to initiate the 180-day time limit. *See Hogan v. Alum. Lock Shingle Corp.*, 214 Or 218, 228, 329 P2d 271 (1958) (notice to agent is notice to principal).

sending or receiving, fails to fulfill its obligations, the prejudice to the defendant is the same. Without full compliance, the system fails and the defendant is denied a speedy trial. The burden of compelling should not fall on the defendant. That is not part of the agreement.

Defendant was brought to trial more than 180 days from the date on which he sent his notice requesting a speedy trial on the Deschutes County detainer to the warden of the Nevada penitentiary. Accordingly, the court erred in denying his motion to dismiss.

Reversed.