878 P.2d 1021

**AMOCO PRODUCTION COMPANY, a corporation, Petitioner–Appellant,**

v.

**NEW MEXICO TAXATION AND REVENUE DEPARTMENT, Respondent–Appellee.**

**No. 15132.**

Court of Appeals of New Mexico.

June 28, 1994.

Michael H. Feldewert, Campbell, Carr, Berge & Sheridan, P.A., Santa Fe, for petitioner-appellant.

Tom Udall, Atty. Gen., Margaret B. Alcock, Sp. Asst. Atty. Gen., New Mexico Taxation and Revenue Dept., Santa Fe, for respondent-appellee.

## OPINION

APODACA, Judge.

Amoco Production Company (Taxpayer) appeals the decision and order of the New Mexico Taxation and Revenue Department (Department), through the Department's hearing officer, denying Taxpayer's protests challenging the Department's method of calculating the interest period for late payments of oil and gas production taxes under NMSA 1978, Section 7-1-67(A) (Repl.Pamp.1993). We hold that the applicable statutes do not authorize the Department to calculate the interest period in the manner proposed by Taxpayer. We thus affirm the hearing officer's decision and order.

## BACKGROUND

Taxpayer produces natural gas from wells that it either owns or operates in New Mexico. It pays to the Department four different taxes on its natural gas production in New Mexico: the Oil and Gas Severance Tax, NMSA 1978, §§ 7-29-1 to -23 (Repl. Pamp.1993); the Oil and Gas Conservation Tax, NMSA 1978, §§ 7-30-1 to -27 (Repl. Pamp.1993); the Oil and Gas Emergency School Tax, NMSA 1978, §§ 7-31-1 to -26 (Repl.Pamp.1993); and the Oil and Gas Ad Valorem Production Tax, NMSA 1978, §§ 7-32-1 to -28 (Repl.Pamp.1993) (collectively referred to as "gas production taxes"). Payment and reporting for these taxes is due on or before the twenty-fifth day of the second month following the month in which the natu-ral gas is severed and sold from the production unit. See, e.g., § 7-29-7.

Gas production taxes are assessed based on the actual price received for the natural gas at the wellhead. Because of recent changes in the production, marketing, and sale of the natural gas, Taxpayer often cannot determine the correct wellhead price at the time the taxes are due. Department regulations thus allow Taxpayer to pay and report the gas production taxes based on an *estimated* wellhead price when the actual price is not known. Reg. TA 13:8. Taxpayer then files amended tax returns when the actual wellhead price is determined. Determination of the actual wellhead price and filing of the amended returns may occur more than one year after the taxes were due.

To comply with the reporting requirements, Taxpayer files two types of forms with the Department each month—an Operator's Remittance Report (an "O-1") and multiple Operator's Unit Reports ("O-2s"). One O-2 form is submitted for the production month in which the gas production taxes are due and shows the estimated taxes owed for that particular month's production, known as a "reporting period." Additional O-2 forms are submitted for any month that was previously reported and for which the taxes paid must be adjusted. These are called "prior period adjustments." The O-1 form summarizes the prior period adjustments and taxes owed for the current reporting period contained in the O-2 forms, as well as any advance payment required by statute. The net amount calculated in the O-1 form is paid to the Department immediately under the special payment provisions of NMSA 1978, Section 7-1-13.1 (Repl.Pamp.1993), while the O-1 and O-2 forms are sent separately by mail, see NMSA 1978, § 7-1-13(B) (Repl. Pamp.1993).

The Department calculates and assesses interest owed for late payment of taxes, see § 7-1-67, based on the O-2 forms. If the actual wellhead price for the reporting period is less than that originally estimated by Taxpayer, Taxpayer can apply for a refund of the excess tax paid. If the actual price is greater than that originally estimated, Taxpayer is assessed the additional tax plus in-

terest. When Taxpayer files amended reports to report prior period adjustments, about 10% to 20% of the adjustments result in Taxpayer having overpaid gas production taxes for the period being adjusted and approximately 80% to 90% of the time in Taxpayer having underpaid such taxes. When Taxpayer reports an overpayment of taxes, Taxpayer is allowed to apply the refund due for prior reporting periods to Taxpayer's liability for current and future tax liabilities. When Taxpayer reports an underpayment of taxes, the Department assesses interest from the date the tax was originally due in addition to the additional tax.

In February, March, and April 1993, Taxpayer protested the Department's assessment of interest and penalties for late payments of natural gas production taxes. Taxpayer specifically objected to the Department's method of calculating the period of time for which interest was due. After a hearing, the hearing officer held that the Department had calculated the period of time correctly, thus upholding the Department's assessment of interest on the overdue tax. Taxpayer appealed this decision. The hearing officer denied the Department's assessment of penalties. The Department did not appeal this ruling.

## DISCUSSION

■ Taxpayer contends that the Department incorrectly calculated the interest owed on late payments because it calculated the interest period as running continuously from the date the Department received the revised O–2 forms back to the date the taxes were originally due. In so doing, Taxpayer argues the Department disregarded any overpayments it received for other reporting periods reflected in the O–2 forms. Arguing that this practice is contrary to Section 7–1–67(A), Taxpayer contends the appropriate method of calculating the interest would be to take into account the overpayments and to treat them as having paid the additional taxes due on reporting periods for which the taxes were underpaid. Such a construction of the applicable statutes would result in Taxpayer paying less interest on the tax deficiencies by shortening the period during which the overdue taxes are deemed not to have been paid.

Disagreeing with Taxpayer's interpretation, the Department allowed overpayments to be credited only against current and future tax liabilities, instead of crediting them as taxes paid on previous reporting periods. We disagree with Taxpayer's construction of the applicable statutory provisions.

■ Statutes are to be interpreted in accordance with the legislative intent and in a manner that will not render the statutes' application absurd, unreasonable, or unjust. *City of Las Cruces v. Garcia*, 102 N.M. 25, 26–27, 690 P.2d 1019, 1020–21 (1984). To do so, we read the statutes in their entirety and "construe each part in connection with every other part to produce a harmonious whole." *State ex rel. Klineline v. Blackhurst*, 106 N.M. 732, 735, 749 P.2d 1111, 1114 (1988). We will not read into a statute language that is not there. *Id.*

Section 7–1–67(A) sets out the method by which interest on underpaid taxes is to be calculated. The statute states in part that:

If any tax imposed is not paid on or before the day on which it becomes due, interest shall be paid to the state on such amount from the first day following the day on which the tax becomes due, without regard to any extension of time or installment agreement, until it is paid....

Focusing on the phrase "until it is paid," Taxpayer argues that phrase should be interpreted as meaning the point in time when the Department receives money that can be allocated to the Taxpayer's liability. This interpretation, according to Taxpayer, would require crediting overpayments to prior underpayment liability, thus shortening the period for which interest is computed. We have considered this phrase in context with other statutory provisions and the overall tax structure. Having done so, we disagree with Taxpayer's interpretation.

NMSA 1978, Section 7–1–29(A) (Repl. Pamp.1993), authorizes the Department to make refunds or credits for overpayments of taxes in response to claims for refunds made under NMSA 1978, Section 7–1–26 (Repl. Pamp.1993). Refunds of taxes paid pursuant to programs administered under NMSA 1978, Section 7–1–2(B) (Repl.Pamp.1993), in-

cluding the gas production taxes, "may be made, at the discretion of the department, in the form of credit against future tax payments if future tax liabilities in an amount at least equal to the credit amount reasonably may be expected to become due." Section 7–1–26(E). NMSA 1978, Section 7–1–68 (Repl. Pamp.1993), provides for the Department's liability for payment of interest that may be due to Taxpayer when there are overpayments of taxes. The pertinent subsections of the statute applicable to Taxpayer's self-assessed gas production taxes state:

A. As provided in this section, interest shall be allowed and paid on the amount of tax overpaid by a person which is subsequently refunded or credited to that person.

. . . .

C. Unless otherwise provided by this section, interest on an overpayment not arising from an assessment by the department shall be paid from the date the claim for refund was made until a date preceding by not more than thirty days the date on which the amount thereof is credited or refunded to any person. . . .

D. No interest shall be allowed or paid with respect to an amount credited or refunded if:

. . . .

(5) the credit or refund is made within one hundred twenty days of the date of the claim for refund of any tax other than income tax. . . .

None of these statutes expressly authorizes the Department to apply overpayments of taxes for one reporting period as offsets against underpayments for another prior reporting period. In fact, the legislature has granted the Department only the specific authority to credit refunds or overpayments of gas production taxes against *future* tax payments. *See* § 7–1–26(E). The Department complied with this provision by allowing Taxpayer to net out its overpayment against current tax liabilities on the O–1 form when Taxpayer filed its amended O–2 form reporting an overpayment of taxes for a prior reporting period.

Other jurisdictions apparently have allowed such offsetting. For example, *Fruehauf Corporation v. United States,* 477 F.2d 568, 201 Ct.Cl. 366 (1973), commented on Congress' intent in enacting Section 6611 of the Internal Revenue Code of 1954 as follows:

The evil at which the statute was aimed was the disparate running of interest on overpayments and underpayments [of taxes], and the remedy provided . . . was termination of the interest on both during any period of time to the extent that they offset each other.

*Id.* 477 F.2d at 572. However, as the hearing officer determined, in enacting the pertinent statutory tax provisions, the New Mexico legislature clearly did not share this concern. New Mexico's statutory scheme treats overpayments and underpayments differently. Taxpayer may receive interest on an overpayment or refund of gas production taxes only if the Department fails to refund the tax within 120 days of the date of the claim for refund; otherwise, no interest is due. *See* § 7–1–68(D)(5). Alternatively, the Department can allow Taxpayer to credit its refund against *future* tax liability. *See* § 7–1–26(E). There is no similar provision allowing a credit for *past* tax liability. There being no such credit allowed by statute, the computation of interest is therefore not affected. Instead, interest on underpayments of taxes is calculated from the first day following the day on which the taxes were due until those taxes are actually paid, without regard to any overpayments. *See* § 7–1–67(A).

In contrast to the above rationale, Taxpayer contends that the statutory basis for its position is not in the overall consideration of the statutory scheme for interest payments but is rather inherent in the simple definition of the word "paid" in Section 7–1–67(A) ("If any tax imposed is not paid . . ., interest shall be paid . . . until [the tax] is paid. . . ."). Taxpayer contends that, because the State had Taxpayer's money on deposit, the tax was paid. We disagree. The entire statutory scheme indicates that a tax is not paid simply when monies are deposited with the State. Rather, the applicable statutes and

Department instructions enacted pursuant to them indicate that, in most instances when taxes are paid, a taxpayer is required to provide the following information to the State: the taxpayer's identity, the tax period to which the monies are to be applied, and the tax program to which the monies are to be applied. *See* NMSA 1978, §§ 7–1–6 to –6.37 (Repl.Pamp.1993) (disbursements); 7–1–13 (Repl.Pamp.1993) (necessity of returns); 7–1–13.1(B)(1) & (2) (Repl.Pamp.1993) (taxpayer must include information required by Department); 7–1–17(B)(1) (Repl.Pamp.1993) (assessment effective upon return). *But see* NMSA 1978, § 7–1–13.1(B)(3)–(5) (Repl. Pamp.1993) (information not required when payment is in cash or by check received in advance of the due date). Otherwise, the monies are not available to the State in any realistic sense of the word, *see* § 7–1–13.1(B) (taxpayer must pay by one of the enumerated means so that funds are immediately available to the State on or before date taxes are due), and therefore cannot be considered to have been "paid." We thus conclude that there is no statutory basis for calculating the interest periods as argued by Taxpayer.

Taxpayer contends that, in proposing a different interpretation of the relevant statutes, it is not asking this Court to perform "judicial surgery." *City of Albuquerque v. Sanchez*, 81 N.M. 272, 273, 466 P.2d 118, 119 (Ct.App.1970), *overruled on other grounds by State v. Ball*, 104 N.M. 176, 718 P.2d 686 (1986). We disagree. Taxpayer is requesting this Court to allow the Department to treat overpayments of taxes in a manner the statutes do not authorize. In effect, Taxpayer is asking us to add provisions to the legislative enactments. This we will not do. *See State ex rel. Klineline*, 106 N.M. at 735, 749 P.2d at 1114. The legislature simply has not chosen to permit application of overpayments that will essentially operate to halt the accumulation of interest on underpayments. We thus conclude that "[t]his is a situation for 'legislative therapy and not judicial surgery.'" *Garrison v. Safeway Stores*, 102 N.M. 179, 181, 692 P.2d 1328, 1330 (Ct.App.) (quoting *Sanchez*, 81 N.M. at 273, 466 P.2d at 119), *cert. denied*, 102 N.M. 225, 693 P.2d 591 (1984).

## CONCLUSION

We hold that interest on underpayment of taxes is calculated without regard to receipt by the Department of any overpayment of taxes. The Department, once a claim for refund is made, is authorized only to allow a taxpayer claiming a refund for overpayment of gas production taxes to credit the refund against current or future tax liabilities. We believe Taxpayer's argument to the contrary should be made to a legislative forum. We therefore affirm the decision of the Taxation and Revenue Department.

**IT IS SO ORDERED.**

ALARID and PICKARD, JJ., concur.