2001-NMSC-032

34 P.3d 593

**NEW MEXICO DEPARTMENT OF HEALTH, Petitioner– Respondent,**

v.

**Fred COMPTON, Respondent–Petitioner.**

No. 26,419.

Supreme Court of New Mexico.

Oct. 16, 2001.

Protection and Advocacy System, Inc., Michael C. Parks, V. Colleen Miller, Sandra L. Gomez, Albuquerque, NM, for Petitioner.

New Mexico Department of Health, Beth W. Schaefer, Assistant Attorney General, Santa Fe, NM, for Respondent.

## OPINION

SERNA, Chief Justice.

{1} Respondent–Petitioner Fred Compton seeks review of an opinion of the Court of Appeals, arguing that the New Mexico Department of Health (the Department) failed to provide him with a civil commitment hearing within the time limits mandated by NMSA 1978, § 43–1–11(A) (1989) and NMSA 1978, § 43–1–15(B) (1993, prior to 1999 amendment). Compton requests that this Court hold that the statutory time periods should be strictly construed and enforced and that the petitions against him should have been dismissed. We affirm.

## I.  Facts and Background

{2} Compton was involuntarily admitted to Las Vegas Medical Center (LVMC) on February 18, 1999, for an emergency mental health evaluation. Police initially encountered Compton as a result of threats he made to family members. The admitting psychiatrist at LVMC noted Compton's long history of mental illness, indicated that Compton suffered from a mental disorder as defined in NMSA 1978, § 43–1–3(O) (1993), and assigned a diagnosis of schizophrenia, paranoid type. On February 22, the Department filed two petitions in district court, one for a thirty-day commitment for mental health evaluation and treatment pursuant to Section 43–1–11(A), and another for appointment of a treatment guardian pursuant to Section 43–1–15(B). Following a determination of indigency, the district court, on February 23, appointed counsel to represent Compton in responding to the Department's two petitions.

{3} A hearing was scheduled for February 25. On that date, the district court postponed the hearing for one week due to illness of the assigned judge. The court held a hearing on March 4, fourteen calendar days after Compton's admission to LVMC and eight court days after the filing of the treatment guardian petition. During the hearing,

Compton's attorney objected, for the first time, to the failure to hold the hearing within the statutorily mandated time and moved to dismiss both petitions. Compton argued that Section 43–1–11(A) and Section 43–1–15(B) mandated that the hearing be held on February 25.

{4} The district court rejected Compton's argument and found by clear and convincing evidence that Compton presented a likelihood of serious harm to himself or to others as a result of a mental disorder. The court entered orders committing Compton to LVMC for evaluation and treatment not to exceed thirty days and appointing a treatment guardian for him. Compton was discharged on March 25, 1999, less than thirty days after the initially scheduled hearing.

{5} Compton appealed to the Court of Appeals on the sole ground that the postponement of the February 25 hearing violated his statutory rights and required dismissal of the petitions. Compton did not appeal the district court's determination that he presented a likelihood of serious harm to himself or to others as a result of a mental disorder. The Court of Appeals issued an opinion affirming the district court's orders. *N.M. Dep't of Health v. Compton*, 2000–NMCA–078, 129 N.M. 474, 10 P.3d 153. The Court determined that the statutory time limits asserted by Compton were mandatory, but not jurisdictional, and that Compton suffered no prejudice from the seven-day postponement. *Id.* ¶¶ 19–20. This Court then granted Compton's petition for writ of certiorari to the Court of Appeals.

## II.  Discussion

### A.  Due Process

{6} Compton does not directly assert a violation of his constitutional right to due process under the Fourteenth Amendment to the United States Constitution. However, he repeatedly refers to the " 'massive curtailment of liberty' " implicated by involuntary civil commitment, relying on the United States Supreme Court's opinions in *Vitek v. Jones*, 445 U.S. 480, 491, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980) and *Addington v. Texas*, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323

(1979), and argues that the hearing rights at issue in this case have "constitutional underpinnings." Additionally, we note that the special concurrence in the Court of Appeals suggested that "liberty interests are implicated" by this case and expressed concern over the lack of protection "for these violated liberty interests." *Compton,* 2000–NMCA–078, ¶ 23, 129 N.M. 474, 10 P.3d 153 (Armijo, J., specially concurring). As a result, we believe it is necessary to address as a threshold matter the constitutional implications of the procedures used in this case in order to place the statutory time limitations in Section 43–1–11(A) and Section 43–1–15(B) in their proper context.

{7} The United States Supreme Court "repeatedly has recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Addington,* 441 U.S. at 425, 99 S.Ct. 1804. This Court has also recognized that confinement "impinges [on] the right to liberty." *State v. Rotherham,* 122 N.M. 246, 255, 923 P.2d 1131, 1140 (1996). However, "[t]he state has a legitimate interest under its *parens patriae* powers in providing care to its citizens who are unable because of emotional disorders to care for themselves; the state also has authority under its police power to protect the community from the dangerous tendencies of some who are mentally ill." *Addington,* 441 U.S. at 426, 99 S.Ct. 1804; *accord Rotherham,* 122 N.M. at 255, 923 P.2d at 1140 (stating that "as long as [individuals] remain dangerous, the State has an interest in committing them to protect [them] and the public"). "In a civil commitment state power is not exercised in a punitive sense." *Addington,* 441 U.S. at 428, 99 S.Ct. 1804. Thus, in order to weigh Compton's liberty interest against the Department's *parens patriae* and police powers, while being "mindful that the function of legal process is to minimize the risk of erroneous decisions," *Addington,* 441 U.S. at 425, 99 S.Ct. 1804, we apply the balancing test established by the Supreme Court in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), in order to assess the amount of process required by the Fourteenth Amendment. *See Rotherham,* 122 N.M. at 262, 923 P.2d at 1147

(applying *Mathews* to the question of whether criminal commitment requires proof beyond a reasonable doubt). Under *Mathews,* we rely on the following factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous depravation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews,* 424 U.S. at 335, 96 S.Ct. 893.

{8} In New Mexico, involuntary civil commitment is governed by the Mental Health and Developmental Disabilities Code, NMSA 1978, §§ 43–1–1 to –25 (1977, as amended through 1998, prior to 1999 amendments). There are three stages of involuntary civil commitment contemplated by the Code, each with different procedural requirements. As a preliminary measure, the Legislature has created a method for involuntary commitment for emergency mental health evaluation and care. NMSA 1978, § 43–1–10 (1989). Under this provision, a peace officer may transport an individual to an evaluation facility if one of four factors are met: (1) the person is subject to lawful arrest; (2) there are reasonable grounds to believe the person has just attempted suicide; (3) there are reasonable grounds to believe the person presents a likelihood of serious harm to himself or herself or to others as a result of a mental disorder; or (4) a licensed physician or psychologist certifies that the person presents a likelihood of serious harm to himself or herself or to others as a result of a mental disorder. Section 43–1–10(A). A court order is not required to transport the person to an evaluation and treatment facility. Section 43–1–10(B). Upon arriving at the facility, the admitting physician or psychologist must conduct an evaluation to determine "whether reasonable grounds exist to detain the proposed client for evaluation and treatment," the outcome of which will be determinative of whether the person is detained for emergency evaluation and treatment. Section 43–1–

10(E). If the individual is detained, he or she

> shall be informed orally and in writing by the evaluation facility of the purpose and possible consequences of the proceedings, the allegations in the petition, [the] right to a hearing within seven days, [the] right to counsel and [the] right to communicate with an attorney and an independent mental health professional of [the person's] own choosing, and shall have the right to receive necessary and appropriate treatment.

Section 43–1–10(F).

{9} The next stage of commitment contemplated by the Code is a thirty-day period of evaluation and treatment. Section 43–1–11. The Legislature has established a number of procedural protections to accompany this level of commitment. Unlike an emergency transport and detention, a thirty-day commitment must be authorized by a court order and only after a hearing at which "the client shall be represented by counsel and shall have the right to present evidence on [the client's] behalf, including testimony by an independent mental health professional of [the client's] own choosing, to cross-examine witnesses and to be present at the hearing." Section 43–1–11(B). The client "has the right to a hearing within seven days of admission unless waived after consultation with counsel." Section 43–1–11(A).

> Upon completion of the hearing, the court may order a commitment for evaluation and treatment not to exceed thirty days if the court finds by clear and convincing evidence that:
>
> (1) as a result of a mental disorder, the client presents a likelihood of serious harm to himself or others;
>
> (2) the client needs and is likely to benefit from the proposed treatment; and

(3) the proposed commitment is consistent with the treatment needs of the client and with the least drastic means principle.

Section 43–1–11(C). The court must find "more likely than not that in the near future the person will attempt to commit suicide or will cause serious bodily harm to himself [or herself] by violent or other self-destructive means," NMSA 1978, § 43–1–3(M) (1993), or "more likely than not that in the near future the person will inflict serious, unjustified bodily harm on another person or commit a criminal sexual offense, as evidenced by behavior causing, attempting or threatening such harm, which behavior gives rise to a reasonable fear of such harm from the person," Section 43–1–3(N).

{10} The final stage of commitment under the Code is an extended commitment of six months. NMSA 1978, § 43–1–12 (1978). In addition to the procedural protections available under Section 43–1–11, the client has the right to request a six-person jury at the hearing. Section 43–1–12(B). Moreover, regardless of the stage of the involuntary civil commitment proceeding, individuals may have alternative remedies outside of the Code. *See* § 43–1–12(E) ("Nothing in this section shall limit the right of a client to petition the court for a writ of habeas corpus."). Thus, the Legislature has enacted a scheme under which individuals are entitled to progressively greater procedural protection in response to increased periods of involuntary civil commitment.

▮ {11} This case involves the intermediate stage of commitment for a thirty-day evaluation and presents two related due process questions: (1) whether the seven-day time limitation within Section 43–1–11(A) is constitutionally required; and (2) whether the delay of fourteen calendar days between Compton's admission and his hearing violated Compton's constitutional rights.[1] We be-

---

1. We do not believe it is necessary to address the procedure for the appointment of a treatment guardian pursuant to Section 43–1–15(B) under a *Mathews* test. The appointment of a treatment guardian does not infringe on the liberty interest of being free from involuntary commitment. Although it does infringe on the right to refuse medical treatment, the hearing to be held within three days of the filing of a petition to appoint a treatment guardian, unlike the hearing on the petition for a thirty-day commitment, is a pre-deprivation hearing, meaning that the individual retains the right to refuse treatment until the hearing. *See* § 43–1–15(A) ("If the client is capable of understanding the proposed nature of treatment and its consequences and is capable of informed consent, [the client's] consent shall be obtained before the treatment is performed.").

lieve both of these questions are answered by the *Mathews* balancing test.[2]

{12} Under the first factor of the *Mathews* test, we agree with Compton that he has a significant liberty interest in being free from involuntary commitment. Indeed, "[w]e are acutely aware of the severe curtailment of liberty which involuntary commitment in a mental institution can entail." *Project Release v. Prevost*, 722 F.2d 960, 971 (2d Cir.1983). The precise issue presented in this case, however, is not whether Compton is entitled to a particular procedure, a judicial hearing, as part of an involuntary civil commitment procedure, but whether that procedure must be provided within fourteen calendar days of his initial admission to LVMC. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333, 96 S.Ct. 893 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965)). Thus, we must assess the risk of error from the absence of a judicial hearing in light of Compton's liberty interest in not being involuntarily confined for a period of fourteen days. *See Addington*, 441 U.S. at 425, 99 S.Ct. 1804 (assessing "the extent of the individual's interest in not being involuntarily confined *indefinitely*" (emphasis added)). We weigh this interest against the compelling governmental interest of exercising its *parens patriae* power to protect individuals from themselves and its police power to protect society from dangerous individuals. *See Rotherham*, 122 N.M. at 262, 923 P.2d at

1147 (discussing the "compelling interest" of the State). Assessing the risk of error, we note that, in order to justify emergency detention under Section 43–1–10, at least two individuals must determine whether reasonable grounds exist to believe that the person is a danger to himself or herself or to others, with one of these individuals most likely being a peace officer and the other being a neutral decision-maker who is highly trained in evaluating the psychological condition of the person. *Cf. Parham v. J.R.*, 442 U.S. 584, 613, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979) ("In general, we are satisfied that an independent medical decisionmaking process, which includes the thorough psychiatric investigation described earlier, followed by additional periodic review of a child's condition, will protect children who should not be admitted; we do not believe the risks of error in that process would be significantly reduced by a more formal, judicial-type hearing."). We also note that individuals who are involuntarily committed under the Code on an emergency basis have the right to counsel and the right to consult with the attorney and an independent mental health professional. With access to these resources, we are confident that any risk of erroneous deprivation of liberty prior to a judicial hearing can be eliminated through alternative means of relief. *See* Rule 5–802 NMRA 2001 (establishing procedures for filing a writ of habeas corpus). Under these circumstances, we do not believe that the risk of an erroneous deprivation of the liberty interest in not being involuntarily committed by mistake is

*But see* § 43–1–15(F) (providing for emergency administration of psychotropic medication "necessary to protect the client from serious harm"). As a result, a delay in conducting the hearing does not cause the individual to suffer a deprivation of liberty.

2. The dissent suggests that, by virtue of the clarity of the relevant statutes and the fact that the Legislature has defined the process that is due, "the Legislature has made unnecessary an inquiry into the length of time a person can be involuntarily confined in a mental institution without a hearing." However, it is the Due Process Clause of the Fourteenth Amendment, not the Legislature, that "determin[es] the amount of process appropriate to protect a liberty or property interest as a matter of constitutional right." *State v. Woodruff*, 1997–NMSC–061, ¶ 27, 124

N.M. 388, 951 P.2d 605. To the extent that the dissent's position could be interpreted "to cede to [the legislative branch] so much of [the judiciary's] control over fundamental constitutional protections," *State v. Nunez*, 2000–NMSC–013, ¶ 47, 129 N.M. 63, 2 P.3d 264, we emphasize that it is the judiciary's responsibility to ensure that statutes enacted by the Legislature satisfy the minimum procedural requirements of the Fourteenth Amendment, both on their face and as applied. *See Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 176, 2 L.Ed. 60 (1803) ("It is, emphatically, the province and duty of the judicial department, to say what the law is."); *Nunez*, 2000–NMSC–013, ¶ 48, 129 N.M. 63, 2 P.3d 264 ("It is the role of the judiciary, and not the legislature, to interpret the constitution.").

sufficiently great to require a hearing within fourteen days of admission.

{13} The Court of Appeals reached a similar conclusion in *Garcia v. Las Vegas Medical Center*, 112 N.M. 441, 445–47, 816 P.2d 510, 514–16 (Ct.App.1991), holding that an involuntary civil commitment for a period of twenty days without a judicial hearing did not violate the Due Process Clause of the Fourteenth Amendment. The Court of Appeals noted that the United States Supreme Court has upheld a Connecticut statute which allowed for a commitment of fifteen days based on a physician's certificate of dangerousness due to mental illness, with an additional thirty days' confinement permitted without the requirement of a court order. *Id.* at 447, 816 P.2d at 516 (relying on *Briggs v. Arafeh*, 411 U.S. 911, 93 S.Ct. 1556, 36 L.Ed.2d 304 (1973), *aff'g mem. Logan v. Arafeh*, 346 F.Supp. 1265 (D.Conn.1972)). The Court of Appeals also noted that the Supreme Court of Colorado upheld an involuntary civil commitment statute which contained no mandatory probable-cause hearing but allowed for a hearing within ten days of a request by the patient or the patient's attorney. *Id.* (relying on *Curnow v. Yarbrough*, 676 P.2d 1177 (Colo.1984) (en banc)). In addition, other courts have upheld similar statutes in response to due process challenges. *See, e.g., Project Release*, 722 F.2d at 974–75 (upholding two New York statutes that permitted sixty-day and fifteen-day commitments without a judicial hearing unless requested by the individual due to other procedural protections, such as the right to counsel, afforded under the statutes). These cases recognize the emergency nature of an involuntary civil commitment and that "the threat of harm to the [individual] or others is of such a nature that confinement must take place immediately. When the choice is between a loss of life or health and a loss of liberty for a brief period of time, the preferable alternative is apparent." *Coll v. Hyland*, 411 F.Supp. 905, 910–11 (D.N.J.1976) (per curiam) (holding that, in a general involuntary commitment situation, a preliminary commitment hearing is not constitutionally required because New Jersey law requires that a final hearing be held within twenty days). *See generally* Marybeth Walsh, Note,

*Due Process Requirements for Emergency Civil Commitments: Safeguarding Patients' Liberty Without Jeopardizing Health and Safety*, 40 B.C. L.Rev. 673, 677–81 (1999). "It is obvious that the hospital authorities must be allowed some time to conduct adequate testing and observation of the patient so that a diagnosis can be made. Consideration also must be given to the necessities of court administration and the opportunity for counsel to prepare for an effective hearing." *Coll*, 411 F.Supp. at 911.

{14} We conclude that the seven-day hearing requirement in Section 43–1–11 is constitutional on its face and that the procedures employed in the present case adequately protected Compton's constitutional right to due process and did not render the statute unconstitutional as applied. We therefore disagree with the assessment that this case involves "violated liberty interests," and we limit the remainder of this opinion to a discussion of statutory requirements and statutory remedies.

## B. Statutory Time Mandates

{15} Compton contends that the time requirements in Section 43–1–11(A) and Section 43–1–15(B) are mandatory and that the appropriate remedy for a violation of the time requirements is dismissal of the petition. We first separately address the time requirements in each statute and then subsequently address the issue of remedies.

{16} Compton argues that Section 43–1–11(A) establishes a mandatory requirement for a hearing within seven days of admission. He asserts that the hearing in the present case exceeded this time limitation by seven days. We begin by correcting Compton's time calculation.

{17} "In computing a period of time prescribed or allowed by a statute or rule, . . . if the period is less than eleven days, a Saturday, Sunday or legal holiday is excluded from the computation." NMSA 1978, § 12–2A–7(E) (1997). Application of this statute yields the following results: Compton's right to a hearing under Section 43–1–11 accrued seven days, excluding weekends, from February 18, his date of admission, which would

have been March 1. The district court conducted the hearing on March 4. Thus, under Section 43–1–11, the hearing was three days late, not seven days late. We consider whether a three-day postponement is permissible under Section 43–1–11(A).

{18} "In construing a particular statute, a reviewing court's central concern is to determine and give effect to the intent of the [L]egislature." *State ex rel. Klineline v. Blackhurst,* 106 N.M. 732, 735, 749 P.2d 1111, 1114 (1988). "[T]he plain language of the statute [is] the primary indicator of legislative intent." *Whitely v. N.M. State Pers. Bd.,* 115 N.M. 308, 311, 850 P.2d 1011, 1014 (1993). Looking to the plain language of the statute, Section 43–1–11(A) provides that Compton had "the right to a hearing within seven days of admission unless waived after consultation with counsel." The Court of Appeals has previously interpreted this language to be silent on the issue of postponement of the hearing; the waiver language "furnishes a means by which an individual may waive [the] right to challenge [the] detention. By waiver [the individual] transforms an involuntary commitment into a voluntary one." *State v. Bunnell (In re Bunnell),* 100 N.M. 242, 244, 668 P.2d 1119, 1121 (Ct.App.1983). We agree with this assessment of the statute. The Legislature has directed that a decision to forgo a hearing to contest a petition for a thirty-day commitment can only be made by an express knowing and voluntary waiver, but Section 43–1–11(A) is silent on the question of whether the district court may postpone the hearing beyond the seven-day requirement. Confronted with legislative silence on this issue, we must determine whether the Legislature intended to allow

for postponement of the hearing by looking to the provisions of the Code as a whole and by assessing the purposes of the seven-day time limitation.[3] *See Sunwest Bank v. Nelson,* 1998–NMSC–012, ¶ 14, 125 N.M. 170, 958 P.2d 740 (stating that it is necessary to resort "to other statutory construction aids in order to discern the intent of the Legislature" in the face of legislative silence on an issue); *Roberts v. Southwest Cmty. Health Servs.,* 114 N.M. 248, 251, 837 P.2d 442, 445 (1992) ("Statutes should be construed so as to facilitate their operation and the achievement of the goals as specified by the legislature.").

{19} The Legislature's decision to provide a right to a hearing within seven days of admission reflects a careful balance between the individual's liberty interests and the interest of the individual and society in proper care and treatment. The goal in establishing a seven-day time frame is, on one hand, to ensure that individuals are not erroneously committed against their will and, on the other hand, to ensure that there is a sufficient period of time after the initial commitment and prior to a hearing for the proper diagnosis and emergency treatment necessary to conduct a meaningful and effective judicial review. The time

after initial commitment before judicial proceedings must be begun is not simply for the purpose of delay. It has a positive aspect as well. There is a compensating advantage to the committed person because in many cases during this period the medical staff at the hospital can adequately alleviate his [or her] mental illness or by use of *non-emergency diagnostic procedures* determine that he [or she] is not a

---

3. We reject Compton's argument that the time requirements in Section 43–1–11(A) are jurisdictional. We agree with the Court of Appeals that "the mandatory statutory requirement that a hearing be held within either seven days for a thirty-day commitment or three days to appoint a treatment guardian does not affect the essential power of the district court to adjudicate the issue before it." *Compton,* 2000–NMCA–078, ¶ 15, 129 N.M. 474, 10 P.3d 153. We also agree with the Court of Appeals that the waiver provision of Section 43–1–11(A) indicates that the Legislature did not intend to establish a jurisdictional requirement. *See id.* ¶ 16; *see also Mitchell–Carr v.*

*McLendon,* 1999–NMSC–025, ¶ 25, 127 N.M. 282, 980 P.2d 65 (discussing a time requirement in the Human Rights Act and stating that "we cannot say that the Legislature intended the requirements of this section to be jurisdictional"); *Redman v. Bd. of Regents,* 102 N.M. 234, 239, 693 P.2d 1266, 1271 (Ct.App.1984) (discussing a time requirement for a de novo hearing by the State Board of Education following a teacher's dismissal and concluding that "the legislature did not intend a jurisdictional requirement in the sense that the right to a timely hearing could not be waived").

"danger to himself [or herself] or others." In such cases, the stigma of court record is avoided and the length of confinement is shortened.

*Logan,* 346 F.Supp. at 1269.

{20} In response to these concerns, the Legislature has provided that, "[i]f the division, physician or evaluation facility decides to seek commitment of the client for evaluation and treatment, a petition shall be filed with the court within five days of admission requesting the commitment." Section 43–1–11(A). This five-day period is, in the Legislature's judgment, a proper amount of time "to evaluate a patient appropriately and to make a determination of the need for continued involuntary hospitalization." Walsh, *supra,* at 690. "It must be remembered that commitment has not been undertaken for the sake of penal detention. The patient is committed for treatment and care, and some knowledge of his [or her] mental condition can be gained by visual observation and diagnostic tests. This takes time." *Logan,* 346 F.Supp. at 1269 (footnote omitted). If the Legislature had required that the filing of the petition and the hearing take place immediately upon admission, many clients might be needlessly detained beyond the initial seven-day evaluation period. *See* Walsh, *supra,* at 684 (discussing commentators' view that, because "many acute psychiatric episodes subside within one to four days, ... many patients whose conditions would have improved sufficiently for discharge in a few days would be retained unnecessarily for long commitment periods"). An immediate hearing "may also harm the patient's clinical interest because it transforms the doctor-patient relationship from a therapeutic to an adversarial one." *Id.* In addition, in order to adequately protect the individual's right to counsel, there must be an adequate amount of time for counsel to review the case and prepare for the commitment hearing. *Coll,* 411 F.Supp. at 911. Any time limitation placed on the hearing requirement must also take into account the administrative burdens

of a judicial hearing, including scheduling, availability of judicial staff, and the impact on treatment resources.[4] *See Parham,* 442 U.S. at 605–06, 99 S.Ct. 2493 ("One factor that must be considered is the utilization of the time of psychiatrists, psychologists, and other behavioral specialists in preparing for and participating in hearings rather than performing the task for which their special training has fitted them. Behavioral experts in courtrooms and hearings are of little help to patients."); *Coll,* 411 F.Supp. at 911.

{21} As can be seen, the Legislature's decision to establish a seven-day hearing requirement implicates a number of different factors. Given the Legislature's awareness of the complex relationship between these various factors and of the alternative remedy of filing a writ of habeas corpus, we do not believe that the Legislature intended to establish a rigid seven-day requirement in Section 43–1–11(A). Just as the constitutional right to due process necessarily requires flexibility, *see Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) ("It has been said so often by this Court and others as not to require citation of authority that due process is flexible and calls for such procedural protections as the particular situation demands."), we believe the Legislature intended to provide enough flexibility in the procedural time requirement of Section 43–1–11(B) to respond to the particular demands of individual cases. For example, because the Legislature provided five days after admission to file a petition, it is conceivable that a full judicial hearing would be required to be held within two days of the filing of the petition. *See* § 43–1–11(B). Under these circumstances, it is highly foreseeable that a postponement might be necessary for either the parties or the court. *See* Walsh, *supra,* at 690–91 (discussing the conclusions of an ad hoc committee formed to evaluate Massachusetts' emergency commitment procedure and stating "[a]ll of the

**4.** Although Compton correctly argues that there is no requirement that the hearing be held at LVMC, the decision to do so stems from the notion that "[h]olding the hearings at the hospital[ ] is less disruptive for patients and makes the

process seem less criminal in nature.... [I]t also reduces the amount of time that the commitment process takes away from physicians' clinical duties." Walsh, *supra,* at 695.

representatives of the judiciary on the Ad Hoc Committee stated that a minimum of five business days between the filing of the petition and the hearing was necessary for the courts to process the petition, prepare the case file and schedule a judge and other staff to travel to the petitioning hospital to hold a hearing"). In fact, the Court of Appeals has specifically faced a situation in which it was necessary to postpone the hearing required under Section 43–1–11(A). In *Bunnell,* an individual who was involuntarily committed pursuant to Section 43–1–10 argued that his Section 43–1–11 hearing should have been postponed in order to allow his counsel adequate time to prepare. 100 N.M. at 244, 668 P.2d at 1121. The Court of Appeals noted that the potentially short period of time between the filing of a petition and a judicial hearing might result in "little time to prepare" for appointed counsel. *Id.* at 244–45, 668 P.2d at 1121–22. The Court "[b]alanc[ed] the need for a prompt hearing with the importance of a meaningful hearing before imposition of a thirty-day detention" and held that the district court "must grant a short continuance when counsel establishes that he [or she] has not had sufficient time to prepare his [or her] client's case." *Id.* at 245, 668 P.2d at 1122.[5] We believe the need for flexibility articulated in *Bunnell* demonstrates that the Legislature did not intend to establish a rigid time requirement and that a postponement is contemplated by Section 43–1–11(A).[6] For the reasons discussed above, we conclude that the seven-day hearing requirement in Section 43–1–11(A) is subject to postponement for good cause.

{22} Our interpretation of Section 43–1–11(A) accords with the Court of Appeals' interpretation of a different statutory time requirement for an administrative hearing. In *Redman,* the Court of Appeals addressed a statute that provided that a de novo hearing on a teacher's dismissal "shall be held" by the State Board of Education within sixty days of receipt of a notice of appeal. 102 N.M. at 238, 693 P.2d at 1270 (internal quotation marks and quoted authority omitted). The Court determined that the sixty-day requirement was mandatory; however, this mandatory requirement did not prevent post-

5. We note that the Court of Appeals also stated in dicta in *Bunnell* that any postponement requires "an immediate preliminary hearing to determine whether the State can present sufficient evidence to justify holding the individual beyond the seven-day emergency period allowed under § 43–1–10." *Bunnell,* 100 N.M. at 245, 668 P.2d at 1122. However, given the procedural protections in Section 43–1–10, including a physician's or psychologist's determination that reasonable grounds exist to believe that the patient is a danger to himself or herself or to others, and the availability of alternative remedies, we do not believe that the Legislature intended to require a probable cause hearing as a precondition to postponement. We further note that the Court of Appeals stated that, "under current procedures, we do not find it inconceivable that the trial court could appoint counsel immediately before the hearing begins." *Bunnell,* 100 N.M. at 245, 668 P.2d at 1122. Under Section 43–1–10(F), the right to counsel, and the right to consult with counsel, attaches upon admission, and the Department and the district court should endeavor to ensure that counsel be appointed at the earliest opportunity. *See* NMSA 1978, § 43–1–4(A) (1978) ("All clients ... shall be entitled to obtain advice of counsel *at any time* regarding their status under the code." (emphasis added)). *See generally* Walsh, *supra,* at 690 (discussing a committee's conclusion "that immediate appointment of counsel was the single most effective method of protecting a patient's rights"). We do not believe that the statute contemplates the appointment of counsel as late as the beginning of a Section 43–1–11 hearing.

6. We respectfully believe that the dissent misreads *Bunnell.* While the Court in that case did hold that a continuance is appropriate, even mandatory, when the seven-day requirement would prevent a meaningful hearing, the Court did not rule that a continuance was appropriate only under those circumstances. Indeed, the Court was not faced with the question of whether postponement could occur for other reasons, so *Bunnell* does not stand for the proposition that Section 43–1–11(A) precludes postponement "by the State," as suggested by the dissent, or by the court, as occurred in this case. *See Fernandez v. Farmers Ins. Co.,* 115 N.M. 622, 627, 857 P.2d 22, 27 (1993) ("The general rule is that cases are not authority for propositions not considered." (quotation marks and quoted authority omitted)). Nor did the Court in *Bunnell* rely on the waiver language of Section 43–1–11(A) to permit a postponement. The Court determined that the waiver language in the statute concerned only a waiver of the hearing, not a waiver of the time requirement. *Bunnell,* 100 N.M. at 244, 668 P.2d at 1121. Thus, the Court determined that Section 43–1–11(A) implicitly allows postponement when it serves the underlying goals of the statute.

ponement. *Id.* at 239, 693 P.2d at 1271. "On showing of good cause, or with a written waiver, the State Board may extend the time." *Id.* at 240, 693 P.2d at 1272.[7]

{23} Our conclusion that the Legislature intended to permit postponements of a Section 43–1–11(A) hearing for good cause is also supported by the somewhat analogous requirement in Rule 5–604 NMRA 2001 for the commencement of trial in criminal cases. Even though this rule protects the important interest of the prompt adjudication and resolution of criminal cases, *State v. Wilson*, 1998–NMCA–084, ¶ 10, 125 N.M. 390, 962 P.2d 636, district courts may extend the six-month commencement requirement "[f]or good cause shown." Rule 5–604(C). As reflected by the power to order postponement in Rule 5–604(C), "trial courts possess the inherent power to manage their dockets," *State v. Coffin*, 1999–NMSC–038, ¶ 65 n. 3, 128 N.M. 192, 991 P.2d 477, and must have the ability to respond to exigencies that arise in individual cases. We do not believe that the Legislature, by establishing the seven-day hearing requirement in Section 43–1–11(A), intended to prevent the exercise of this power in response to good cause for postponement.

{24} Considering the number of factors at stake in establishing a seven-day hearing requirement and the number of variables that might necessitate a delay in particular cases, we believe that the Legislature intended to allow postponement of the seven-day hearing requirement in Section 43–1–11(A). We therefore hold that Section 43–1–11(A) imposes a mandatory requirement that a hearing be held within seven days of admission unless good cause exists to postpone the hearing. A determination of good cause should take into account any objection by the client, as well as the client's substantial interest in not being mistakenly confined against his or her will. Further, district courts must

consider the Legislature's intent to require a prompt hearing on a thirty-day commitment petition in determining whether good cause exists for postponement. Any postponement should be narrowly prescribed and should be allowed only for so long as necessity demands, again taking into account the legislative intent for a prompt judicial hearing.

{25} In this case, the district court scheduled a timely hearing but postponed the hearing for three days beyond the seven-day requirement in Section 43–1–11(A) due to illness of the presiding judge. Compton did not object or make any demand for a hearing or for his release until the scheduled hearing on March 4. Under these circumstances, we believe that good cause existed for a postponement and that the postponement was sufficiently minimal so as not to infringe unduly on Compton's statutory right to a prompt hearing. *Cf. State v. Aaron*, 102 N.M. 187, 191–92, 692 P.2d 1336, 1340–41 (Ct.App.1984) (discussing the requirement of good cause for a continuance and referring to *People v. Watson*, 650 P.2d 1340, 1343 (Colo. Ct.App.1982), in which "good cause was shown when the trial judge became ill"). In addition, as recognized by the Court of Appeals, the postponement did not affect the length of Compton's involuntary commitment because the district court based the thirty-day commitment period on the date of the originally scheduled hearing. *Compton*, 2000–NMCA–078, ¶ 20, 129 N.M. 474, 10 P.3d 153. We conclude that the district court did not err in postponing the Section 43–1–11 hearing.

{26} We now turn to the time requirement in Section 43–1–15(B). We begin by noting that the hearing contemplated by Section 43–1–15(B) serves a different purpose and protects different interests than a commitment hearing under Section 43–1–11. Section 43–1–15(A) governs the administration of "psychotropic medication, psychosurgery,

---

**7.** The dissent's suggestion that if the Legislature intended to allow postponement for good cause it could have explicitly so provided would have been equally applicable to the statute at issue in *Redman*. It is worth noting that the Legislature could also have easily provided in Section 43–1–11(A) that postponements are impermissible. As with the statute in *Redman*, Section 43–1–11(A)

does not expressly allow or disallow postponement, and "[l]egislative silence is at best a tenuous guide to determining legislative intent." *Swink v. Fingado*, 115 N.M. 275, 283, 850 P.2d 978, 986 (1993). Our resort to "the objective the legislature has sought to accomplish," *id.*, in the face of legislative silence hardly can be said to amount to "judicial surgery."

convulsive therapy, experimental treatment or behavior modification program involving aversive stimuli or substantial deprivations." This statute provides that "[i]f the client is capable of understanding the proposed nature of treatment and its consequences and is capable of informed consent, his [or her] consent shall be obtained before the treatment is performed." Section 43–1–15(A). This statute is intended to protect a client's right to refuse treatment. However, if the physician or mental health professional "believes that the client is incapable of informed consent, he [or she] may petition the court for the appointment of a treatment guardian to make a substitute decision for the client." Section 43–1–15(B). This provision is intended to protect clients' "right to receive necessary and appropriate treatment," Section 43–1–10(F), when they are unable to do so themselves. In order to protect a client's right to refuse treatment, however, there must be a hearing at which the client has the right to be present and the right to representation of counsel, and the court must "find[ ] that the client is not capable of making his [or her] own treatment decisions" before it is permitted to appoint a treatment guardian. Section 43–1–15(B). The "hearing on the petition shall be held within three court days." *Id.* Under Section 43–1–15(B), a hearing for appointment of the treatment guardian should have been held in this case three court days after the filing of the petition on February 22, which would have been February 25, the date of the original hearing. Thus, the hearing for appointment of the treatment guardian was five days late.

{27} Unlike Section 43–1–11, Section 43–1–15(B) does not implicate a client's liberty interest in being free from involuntary commitment. A hearing under Section 43–1–15(B) protects a client's right to refuse treatment and the right to necessary and appropriate treatment. The client retains the right to refuse treatment unless a court makes the appropriate finding following a hearing. Thus, for purposes of the right to refuse treatment, Section 43–1–15(B) provides for a pre-determination hearing. As a result, we believe that the purpose of requiring a hearing within three days is to ensure that clients receive appropriate and necessary treatment at the earliest opportunity. *See* NMSA 1978, § 43–1–7 (1977) ("Each resident client receiving mental health services shall have the right to prompt treatment...."). The short period of time between the filing of the petition and the hearing indicates the Legislature's view of the immediacy and importance of ensuring proper treatment. We assess whether the three-day requirement may be postponed for good cause in light of this purpose.

{28} As the Court of Appeals noted, the language in Section 43–1–15(B), with the use of "shall," is clear and unambiguous and creates a mandatory hearing deadline. *Compton,* 2000–NMCA–078, ¶ 11, 129 N.M. 474, 10 P.3d 153. However, we note that the filing of the petition itself is not mandatory even if the physician or mental health professional believes that the client is incapable of informed consent. *See* § 43–1–15(B) (providing that the physician or mental health professional "*may* petition the court for the appointment of a treatment guardian" (emphasis added)); *see also* NMSA 1978, § 12–2A–4(B) (1997) (" 'May' confers a power, authority, privilege or right."). In addition, Section 43–1–11(D) provides that a court which makes the appropriate findings for a thirty-day commitment "shall hear further evidence as to whether the client is capable of informed consent" for purposes of determining whether to appoint a treatment guardian, regardless of the filing of a petition pursuant to Section 43–1–15(B). Finally, Section 43–1–15(F) provides a mechanism for the emergency administration of psychotropic medication if it is "necessary to protect the client from serious harm" while a petition for appointment of a treatment guardian is pending. As a result, at least in the context of an emergency involuntary commitment under Section 43–1–10 and a thirty-day commitment petition under Section 43–1–11, we believe that a narrowly prescribed postponement of the three-day hearing requirement under Section 43–1–15(B) for good cause will not substantially interfere with the client's "right to prompt treatment," Section 43–1–7. While we caution the district court to make every effort to comply with the statutory time mandate in order to protect the client's

right to treatment, we conclude that the court did not err in postponing the hearing for good cause.

## C. Remedy

{29} Compton argues that the proper remedy for a violation of the statutory time limits would be the immediate dismissal of the petition. We disagree.

{30} The Legislature has expressly provided a remedy for a violation of the procedural protections contained in the Mental Health and Developmental Disabilities Code. "Any client who believes that his [or her] rights, as established by this code or by the constitution of the United States or of New Mexico, have been violated shall have a right to petition the court for redress. . . . The court shall grant relief as is appropriate, subject to the provisions of the Tort Claims Act." NMSA 1978, § 43–1–23 (1978). This statute distinguishes a violation of the time requirements in the Code from the violation of analogous time requirements in other statutes or rules. For example, Rule 5–604(F) expressly provides that upon a failure to comply with the time requirements for commencement of trial "the information or indictment filed against such person shall be dismissed with prejudice." Similarly, in addressing a statutory time requirement that "does not prescribe a result for failure to comply," *Redman*, 102 N.M. at 238, 693 P.2d at 1270, the Court of Appeals has held that "the failure to commence and complete the hearing within sixty days is reversible error, unless the requirement is waived or unless the delay occurred for good cause." *Id.* at 239, 693 P.2d at 1271. In the absence of a statutory remedy, then, "the proper analysis for dismissal is whether the delay prejudiced [the individual.]" *Compton*, 2000–NMCA–078, ¶ 12, 129 N.M. 474, 10 P.3d 153; *accord State v. Budau*, 86 N.M. 21, 22–23, 518 P.2d 1225, 1226–27 (Ct.App.1973) (discussing the requirement of arraignment within fifteen days of the filing of the information or indictment). Given the Legislature's express provision of a remedy in Section 43–1–23, these approaches to analogous time requirements are inapposite. Based on the plain language of Section 43–1–23, we do not believe that the

Legislature contemplated dismissal as a proper remedy for a violation of the procedural requirements of the Code.

{31} We also believe that the remedy of dismissal for a violation of the procedural requirements at issue in this case would be inconsistent with the purposes of the Code. First, as mentioned above, Section 43–1–15(B) does not implicate the liberty interest of not being improperly committed involuntarily; instead, it implicates the client's right to informed consent and the client's right to necessary and appropriate treatment. Because Section 43–1–15(B) contemplates a pre-determination hearing, the failure to hold the hearing within three court days affects only the right to necessary and appropriate treatment. Thus, not only is the remedy of dismissal not contemplated by Section 43–1–15(B), but it would be entirely antagonistic to the purposes of this statute to order dismissal because such a remedy would prevent individuals from receiving necessary and appropriate treatment. Instead, in order to protect the client's right to necessary and appropriate treatment, and to protect the client from self-inflicted harm, there is a statutory remedy for a violation of Section 43–1–15(B). "If a licensed physician believes that the administration of psychotropic medication is necessary to protect the client from serious harm which would occur while the provisions of Subsection B of this section are being satisfied, he [or she] may administer the medication on an emergency basis." Section 43–1–15(F).

{32} Second, with respect to a violation of the time requirements in Section 43–1–11(A),

> it is not true that the release of a genuinely mentally ill person is no worse for the individual than the failure to convict the guilty. One who is suffering from a debilitating mental illness and in need of treatment is neither wholly at liberty nor free of stigma. It cannot be said, therefore, that it is much better for a mentally ill person to "go free" than for a mentally normal person to be committed.

*Addington*, 441 U.S. at 429, 99 S.Ct. 1804 (citations omitted). In the present case, for example, although Compton "disputes the notion that he was better off being involuntarily

detained and subjected to involuntary mental health institutionalization," he does not dispute the district court's finding by clear and convincing evidence that he presented a danger to himself or others as a result of mental illness necessitating a thirty day commitment. The Court of Appeals noted that "[t]he district court asked [Compton's] attorney to explain what remedy [Compton] had if grounds for commitment existed, and [Compton's] counsel replied, 'that he doesn't receive the treatment which he, in accordance with the doctor's testimony, requires.' " *Compton,* 2000–NMCA–078, ¶ 3, 129 N.M. 474, 10 P.3d 153. This remedy would clearly frustrate Section 43–1–11's purpose of ensuring that individuals who pose a danger to themselves or others as a result of mental illness receive proper care and treatment. Although in a different case a violation of Section 43–1–11(A) might prejudice an individual's right to be free from improper involuntary commitment due to an erroneous finding under Section 43–1–10, we believe that the alternative remedy of filing a petition for writ of habeas corpus provides an adequate safeguard. *See Logan,* 346 F.Supp. at 1269. In light of the urgent need for treatment in these cases, the potentially harmful consequences to either the individual or to others for an improper release, the express provision of a statutory remedy, and the availability of the alternative remedy of habeas corpus, we do not believe that the Legislature intended dismissal of the petition as a proper remedy for a violation of the time requirements in Section 43–1–11 or Section 43–1–15.[8]

### III. Conclusion

{33} We conclude that the district court did not err in postponing the Section 43–1–11 hearing for three days due to good cause and the Section 43–1–15(B) hearing for five court days for good cause. We also conclude that dismissal of a petition is not a proper remedy

for a violation of the procedural requirements of the Code. We therefore affirm.

{34} **IT IS SO ORDERED.**

WE CONCUR: JOSEPH F. BACA, Justice, and PETRA JIMENEZ MAES, Justice.

GENE E. FRANCHINI, Justice (dissenting).

PAMELA B. MINZNER, Justice (dissenting).

MINZNER, Justice (dissenting).

{35} I respectfully dissent. I agree that the issues in this case are not moot, but I believe the statutory provisions at issue represent the clear judgment of the Legislature that Petitioner was entitled to release when he was not provided a hearing within seven days. NMSA 1978, §§ 43–1–10(F), –11(A) (1989). Thus, I believe that the relevant statutory provisions compel us to reverse the Court of Appeals and remand this case to the district court with directions to dismiss the district court's order.

{36} Petitioner has been released from the Las Vegas Medical Center, and we need not restore to him through the mandate of this court the liberty he sought from the district court. Indeed, we cannot restore to him the liberty of which he was deprived. Nevertheless, he represents a class of citizens for whose interests in liberty the Legislature has made specific provision. For other members of that class, the issues raised in this appeal remain undecided. There is the distinct possibility that those issues may recur but evade review. For these reasons, for these citizens, we ought to resolve the issues raised in this case. The Court of Appeals was right to address the issues raised, rather than to dismiss the appeal as moot. *See State v. Bunnell (In re Bunnell),* 100 N.M. 242, 244, 668 P.2d 1119, 1121 (Ct.App.1983).

---

8. The dissent suggests that the "only" proper relief in this case is dismissal. We do not rule out the possibility that the "relief" and "redress" to which the Legislature referred in Section 43–1–23 might include dismissal of a petition or release from custody under appropriate circumstances as determined by the district court. However, if the Legislature had intended to re-

quire a single remedy that applies uniformly in all cases in which there is a violation of rights, or even a violation of a particular right, it would not have vested the district court with discretion to select "appropriate" relief, and if the Legislature had intended for the relief to be automatic or immediate, it would not have explicitly required that the client petition the court for redress.

{37} Sections 43–1–10(F) and 43–1–11(A) are straightforward. The first provision, concerning emergency mental health evaluation and care, states that "[u]pon arrival at an evaluation facility, the proposed client shall be informed orally and in writing by the evaluation facility of . . . his right to a hearing within seven days. . . ." The second provision, concerning the commitment of adults for a thirty-day period, begins "[e]very adult client involuntarily admitted to an evaluation facility pursuant to Section 43–1–10 NMSA 1978 has the right to a hearing within seven days of admission unless waived after consultation with counsel."

{38} The Court of Appeals attempted to construe these provisions, with reference to our cases, as either jurisdictional requirements or mandatory preconditions. The Court of Appeals concluded that the statutes quoted above "do[ ] not affect the essential power of the district court to adjudicate the issue before it." *N.M. Dep't of Health v. Compton*, 2000–NMCA–078 ¶ 15, 129 N.M. 474, 10 P.3d 153. I respectfully submit that the Court of Appeals addressed the wrong issue. The jurisdictional-mandatory distinction is not applicable to instances of involuntary confinement for mental health purposes. The issue in such cases is not whether the failure to comply with the time limits deprives the district courts of jurisdiction. Rather, the issue is whether the time limits provide a protection or protections that the class of citizens the Legislature was attempting to protect can enforce in the district court. I see no reason to construe the text of the statutes to limit the protection they seem intended to provide.

{39} In addition to the text of the statutes, our case law indicates that the statutes do not contemplate routine continuances. In *Bunnell*, 100 N.M. at 244, 668 P.2d at 1121, the court reasoned that Section 43–1–11(A) "does not provide for postponement but instead furnishes a means by which an individual may waive his right to challenge his detention." The court ultimately held that the seven-day hearing mandated by Sections 43–1–10(F) and 43–1–11(A) could be continued, but only "when counsel [for the person being committed] establishes that he has not

had sufficient time to prepare his client's case." 100 N.M. at 245, 668 P.2d at 1122. Moreover, the court noted that "[i]f the trial court grants such a continuance, it must also hold an immediate preliminary hearing to determine whether the State can present sufficient evidence to justify holding the individual beyond the seven-day emergency period." *Id.*

{40} The majority construes *Bunnell* as authority for its conclusion that the Legislature has been silent "on the question of whether the district court may postpone the hearing beyond the seven-day requirement." Majority Opinion ¶ 18. I respectfully disagree. I believe *Bunnell* supports the view that a continuance is only appropriate when: (1) it is requested by the individual being committed, and (2) it serves that person's interests; that is, when it does not violate his or her due process rights. It seems to me that *Bunnell* understood Section 43–1–11(A) to preclude postponement of the seven-day hearing by the State but to permit waiver by the individual being committed.

{41} Due to the clarity of our statutes, we need not decide whether the delay of fourteen calendar days between Compton's admission and his hearing violated his constitutional rights. Had the Legislature intended a "good cause" exception to the seven-day time frame of the statutes in question, it could easily have said so. The addition of the simple phrase "except for good cause shown" would have sufficed. Alternatively, the Legislature could have provided for a hearing "within a reasonable period of time." The Legislature took neither of these approaches. Rather, the Legislature has made unnecessary an inquiry into the length of time a person can be involuntarily confined in a mental institution without a hearing. The Legislature has defined the process that is due, Petitioner has not argued that the Legislature defined his rights too narrowly, and the Court need not address whether the Legislature has defined his rights too broadly.

{42} I conclude that the Legislature has provided a mandatory seven-day time limit for a hearing in involuntary commitment proceedings, although the right may be waived. I also conclude that the Legislature has pro-

vided an express remedy for violations of the statutory provisions at issue. NMSA 1978, § 43–1–23 (1978) states:

> Any client who believes that his rights, as established by this code or by the constitution of the United States or of New Mexico, have been violated shall have a right to petition the court for redress. The client shall be represented by counsel. The court shall grant relief as is appropriate, subject to the provisions of the Tort Claims Act [41–4–1 to 41–4–27 NMSA 1978].

{43} The Court of Appeals noted that "because there is no indication in the record that [Compton] sought to be released on February 25, 1999, or objected to the continuance of his seven-day hearing until the hearing was held seven days later, the district court was unable to grant him dismissal as a remedy." *Compton*, 2000–NMCA–078, ¶ 20, 129 N.M. 474, 10 P.3d 153. The emphasis, however, should not be on the actions taken by individuals to enforce their rights, but rather on ensuring that those rights are not violated in the first place. The waiver provision of Section 43–1–11(A) states that the right to a hearing can be "waived after consultation with counsel." This indicates that waiver is to be an affirmative act. The burden rests with the Department of Health and with the district court to ensure that the hearing takes place within the time limit proscribed by the Legislature. If the individual's rights are nonetheless violated, his or her objection becomes a practical necessity. The practical necessity does not justify treating the absence of an objection as a waiver of any protection the Legislature intended the hearing to ensure and the court to enforce.

{44} The statute speaks of "appropriate" relief being granted. The forgoing analysis leads me to conclude that the only appropriate relief for one who has not been given a mandatory hearing within seven days of his or her commitment is immediate release from the facility. The individual is certainly subject to future confinement, but only if one of the conditions of NMSA 1978, § 43–1–10(A) (1989) is met. Furthermore, the determination that the individual meets one of these conditions must be based on evidence of the person's mental health status at the time of dismissal. To allow re-confinement based on previous evaluations and evidence would render the individual's release meaningless.

{45} The majority suggests that the remedy of dismissal would not serve the public health purposes of involuntary medical confinement. Majority Opinion ¶ 31. I believe that the Legislature has taken into account those purposes in crafting the statutory scheme of which Sections 43–1–10(F) and 43–1–11(A) are part. Ultimately, the nature of the right protected by this statutory scheme compels dismissal when the Department of Health has not provided the district court the necessary evidence within the time limit set by the Legislature. As our courts have said on other occasions in a somewhat different context, legislative therapy, rather than judicial surgery, is required. *E.g., Amoco Prod. Co. v. N.M. Taxation & Revenue Dep't*, 118 N.M. 72, 76, 878 P.2d 1021, 1025 (Ct.App. 1994).

{46} For the foregoing reasons, I respectfully dissent.

I CONCUR: GENE E. FRANCHINI, Justice.